ITT INDUSTRIAL CREDIT COMPANY, a corporation, Plaintiff,

v.

L–P GAS EQUIPMENT, INC., a corporation and Carolyn Sue Scroggins, as guardian of the Estate of Otis Milford Scroggins, Jr., a/k/a Mel Scroggins, Defendants.

No. CIV–76–0467–D.

United States District Court, W. D. Oklahoma.

March 31, 1978.

James H. Bellingham, R. L. Buckelew, Oklahoma City, Okl., for plaintiff.

Gomer Smith, Jr., Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

This action arises from the failure of Defendants L–P Gas Equipment, Inc. (hereinafter referred to as L. P. Gas Equipment) and Otis Milford Scroggins, Jr., a/k/a Mel Scroggins, to remit to Plaintiff proceeds from the sale of several large propane storage tanks. Plaintiff asserts that the Defendants' failure to remit these proceeds to the Plaintiff constitutes a breach of contract and a tortious conversion of Plaintiff's personal property. This Court has jurisdiction of the matter by reason of diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332. The cause has been tried to the Court and is now ready for determination. Following the nonjury trial, the parties have each submitted Proposed Findings of Fact and Conclusions of Law and additional oral arguments have been held.

The evidence reveals that in late 1973 and early 1974 Chester Belcher, d/b/a Chester Belcher Propane Company (Belcher) purchased ten 30,000 gallon propane storage tanks (tanks) from Trinity Industries, Inc. (Trinity). In connection with the purchase of each tank, Belcher executed a retail installment contract and security agreement (Plaintiff's Exhibits Nos. 1–8) and a financing statement (Plaintiff's Exhibits Nos. 18–25). Trinity later assigned these contracts to the Plaintiff. The financing statements were subsequently filed with the County Clerk of Oklahoma County.

On August 1, 1975, Belcher executed a Contract for Sale (Plaintiff's Exhibit No. 9) whereby he sold the assets of his propane business to L. P. Gas Fuels, Inc. and Otis Milford Scroggins, Jr., individually. Scroggins was the president of L. P. Gas Equipment, Inc. The ten tanks were among the assets of Belcher transferred in the sale. As part of the purchase price, the buyers were to assume certain liabilities of Belcher (Plaintiff's Exhibit No. 27). Belcher's indebtedness to Plaintiff with regard to the tanks were among those liabilities of Belcher that were to be assumed by the buyers.

The Plaintiff was notified of the sale and consented to the same upon the condition that as L. P. Gas Fuels, Inc. and Scroggins sold each tank, they were to remit the sale proceeds to the Plaintiff to be applied toward Belcher's indebtedness on that tank (Belcher deposition, at 15–16; Vaile R. Ward deposition, at 23). Plaintiff did not execute any written contracts with either L. P. Gas Fuels, Inc. or Scroggins in connection with the Plaintiff's security interests in the tanks. The retail installment contracts, security agreements and financing statements on the tanks continued to be carried in Belcher's name.

In September and October, 1975, L. P. Gas Equipment, Inc., through Scroggins, sold eight of the tanks to Propane Reserves, Inc. In discussions prior to the sale, Scroggins told Ralph G. Howard, who at that time was the president of Propane Reserves, that as Propane Reserves made payment for each tank, that tank would be paid off to Plaintiff. Propane Reserves was to make payment to L. P. Gas Equipment who would then remit the proceeds on each tank to the Plaintiff (Howard deposition, at 11–12). Though Propane Reserves made payment to L. P. Gas Equipment for the eight tanks, L. P. Gas Equipment only remitted to Plaintiff the proceeds from the sale of one of the eight tanks sold. The proceeds from the sales of the remaining seven tanks were deposited into L. P. Gas Equipment's corporate bank account and were ultimately utilized for payment of other corporate obligations of L. P. Gas Equipment.

Plaintiff claims that $60,748.55 remains unpaid on the accounts secured by the seven tanks. It brings the instant action on the basis that the Contract for Sale whereby Belcher sold his propane business to L. P. Gas Fuels, Inc. and Scroggins constituted a third-party beneficiary contract wherein the buyers, L. P. Gas Fuels, Inc. and Scroggins, agreed to assume payment of Belcher's debt to Plaintiff on the tanks. Plaintiff contends that the Defendants' failure pay such debt constitutes a breach of that contract and that the Defendants' subsequent deposit of the proceeds from the sales of the tanks into L. P. Gas Equipment's corporate account, and the ultimate use of said proceeds toward payment of other corporate obligations, constitutes a tortious conversion of those proceeds to the Defendants' own use and benefit. Plaintiff maintains that Scroggins is personally liable herein as Scroggins became personally obligated to the Plaintiff for the payment of

Belcher's debt to the Plaintiff under the aforementioned Contract for Sale. Plaintiff also contends that Scroggins' negligent participation in the sale of the secured tanks, the deposit of the proceeds into the corporate account of L. P. Gas Equipment and the ultimate use of the proceeds for the payment of other corporate obligations of L. P. Gas Equipment, renders Scroggins, as a corporate officer of L. P. Gas Equipment, personally liable for the conversion of said proceeds.[1]

Upon the failure of L. P. Gas Equipment to plead or otherwise defend as required by law, this Court on August 9, 1976 entered default judgment against said Defendant pursuant to Rule 55, Federal Rules of Civil Procedure.

Scroggins contends that Plaintiff is not entitled to recover from him on the aforementioned Contract for Sale between Belcher and L. P. Gas Fuels, Inc. and Scroggins on the ground that said contract was made for the benefit of Belcher and was not intended to, and did not make, Plaintiff a third-party beneficiary of that contract. He further argues that the Contract for Sale was rescinded in December, 1975 before this suit was commenced. Scroggins maintains that he did not tortiously convert the proceeds from the sales of the tanks and that he has no personal liability for any amounts owed on the tanks.

## BREACH OF CONTRACT

■ In this diversity case the law of Oklahoma applies. *See Jaeco Pump Co. v. Inject-O-Meter Manufacturing Co.*, 467 F.2d 317 (Tenth Cir. 1972); *Denham v. Southwestern Bell Telephone Co.*, 415 F.Supp. 530 (W.D.Okl.1976).

■ 15 Okl.Stat.1971 § 29 provides that a "contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind

---

1. As a result of injuries sustained in a traffic accident in March, 1976, Scroggins was judicially declared incompetent and Carolyn Sue Scroggins was appointed as his guardian. In February, 1977, Carolyn Sue Scroggins, as guardian of the person and estate of Scroggins, was substituted in this action as party defendant for Scroggins. On September 20, 1977, Scroggins was restored to full competency and the guardianship of Carolyn Sue Scroggins was terminated (Defendant's Exhibit No. 9).

it." Under Oklahoma law, a person cannot enforce in his own behalf as a third-party beneficiary a contract between others unless it clearly appears that the contract was expressly made for his benefit and the fact that he will be incidentally benefitted by performance of the contract is insufficient. *McConnico v. Marrs*, 320 F.2d 22 (Tenth Cir. 1963); *Neal v. Neal*, 250 F.2d 885 (Tenth Cir. 1957); *King v. Rainbolt*, 515 P.2d 228 (Okl.1973).

■ As a general proposition, the determining factor as to the right of a third-party beneficiary is the intention of the parties who made the contract. The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts. Thus, it is often stated that the contract must have been intended for the benefit of the third person in order to entitle him to enforce it. 17 Am.Jur.2d *Contracts* § 304 (1964). *See Byler v. Great American Insurance Co.*, 395 F.2d 273 (Tenth Cir. 1968); *Hamill v. Maryland Cas. Co.*, 209 F.2d 338 (Tenth Cir. 1954); *G. A. Mosites Co. of Forth Worth, Inc. v. Aetna Casualty & Surety Co.*, 545 P.2d 746 (Okl. 1976). There is no requirement of a mutual intent, as to right of enforcement, on the part of the contracting parties; instead, it is the intent or purpose of the promisee who pays for the promise that has been generally looked upon as governing. 2 Williston on Contracts § 356A (3d ed. 1959). *See Hamill v. Maryland Cas. Co., supra.* Otherwise stated, if the performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary, he is a creditor beneficiary and may enforce the promise. *Id. See* 2 Williston on Contracts § 361 (3d ed. 1959); Restatement of Contracts §§ 133(b), 136(1)(a) (1932). The doctrine that a third person may maintain an action on a contract made for his benefit has been applied to a promise made by the purchaser of property to the seller to pay, as part of the consideration, a debt or obligation due from the seller to a third person. *Sigmon v. Rorabaugh-Brown Dry Goods Co.*, 110 Okl. 17, 235 P. 921 (1925); *Rives v. Ada Electric & Gas Co.*, 91 Okl. 275, 217 P.

447 (1923); *Baker-Hanna-Blake Co. v. Paynter-McVicker Grocery Co.*, 73 Okl. 22, 174 P. 265 (1918); 17A C.J.S. *Contracts* § 519(7) (1963).

■ An examination of the terms of the Contract for Sale, construed in the light of the circumstances under which it was made and the apparent purpose that the parties were trying to accomplish, indicates that the parties to that contract intended that the Plaintiff was to be a third-party beneficiary of the contract. The contract provisions clearly establish that as part of the consideration for the purchase of Belcher's propane business, the buyers were to directly assume Belcher's indebtedness to the Plaintiff for the tanks. *See* Plaintiff's Exhibit Nos. 9, 27; Belcher deposition, at 15. The evidence clearly establishes that the parties to the Contract for Sale intended that the Plaintiff, as a listed creditor of Belcher, was to receive a benefit which could be enforced in court. It was not necessary that the Plaintiff be specifically named in the Contract for Sale in order to recover thereon. *United States v. State Farm Mutual Automobile Insurance Co.*, 455 F.2d 789 (Tenth Cir. 1972); *Lawrence Nat. Bank v. Rice*, 82 F.2d 28 (Tenth Cir. 1936); 17 Am.Jur.2d *Contracts* § 313 (1964); 17A C.J.S. *Contracts* § 519(4) (1963). The contract established that the buyers were to assume certain liabilities of Belcher, and the facts and circumstances surrounding the transaction show clearly that the Plaintiff was a member of the class of creditors to whom Belcher was indebted. In view of the foregoing, the Court finds and concludes that the buyers of the Contract for Sale, L. P. Gas Fuels, Inc. and Scroggins, were contractually obligated to pay Belcher's indebtedness to the Plaintiff on the seven tanks involved herein.

■ With regard to Scroggins' personal liability arising from this contract, officers of a corporation generally are in the same position as agents of a private individual. As is true of agents generally, corporate officers are not personally liable on the corporation's contracts if they do not pur-

port to bind themselves individually. However, an officer may be liable to a creditor on a contract which he executes in such a way as to make himself personally liable. 19 Am.Jur.2d *Corporations* § 1341 (1965); 19 C.J.S. *Corporations* § 840 (1940). In determining whether a corporate officer is liable on a contract, the particular form of the promise in, or signature of, such contract is of prime importance in deducing the intention with which the contract was executed. 19 Am.Jur.2d *Corporations* § 1343 (1965). If a corporate officer is acting on his own behalf, he is personally liable even if he signs his name in his official capacity. In accordance with the rule as to agents generally, an officer who signs a corporate contract containing a promise in proper form for an individual is not relieved from personal liability by the addition to his name of an affix such as "director," or "president," or the like. *Id.* § 1344.

■ The Contract for Sale involved herein provides that the agreement was "between CHESTER BELCHER PROPANE, INC. and CHESTER BELCHER, individually, hereinafter collectively referred to as SELLER, and L. P. GAS FUELS, INC. and OTIS MILFORD SCROGGINS, JR., individually, hereinafter referred to collectively as BUYER." The contract is subscribed "L. P. Gas Fuels, Inc., By Otis Milford Scroggins, Jr., Otis Milford Scroggins, Jr. (Individually)" (Plaintiff's Exhibit No. 9).

In light of the aforementioned rules of law, and in view of the contents of the contract between Belcher and L. P. Gas Fuels, Inc. and Scroggins, the Court finds that Scroggins executed the Contract for Sale in such a way as to make himself personally liable. Scroggins is therefore personally liable to the Plaintiff for the breach of his contractual obligation to pay Belcher's indebtedness to the Plaintiff for the seven tanks involved herein.

## CONVERSION

Plaintiff contends that Scroggins is personally liable for the conversion of the proceeds from the sales of the tanks from L. P. Gas Equipment to Propane Reserves. Plaintiff argues that the utilization by L. P. Gas Equipment and Scroggins of these proceeds for the benefit of L. P. Gas Equipment was an act of dominion wrongfully exerted over or inconsistent with the Plaintiff's right in said proceeds and constitutes a conversion of said proceeds by both L. P. Gas Equipment and Scroggins. Plaintiff contends that Scroggins' active participation in the alleged conversion makes him liable for the conversion in an individual capacity.

Scroggins maintains that he did not tortiously convert said proceeds and has no personal liability for the amount owed on the tanks. He states that he was at all times material hereto acting within the scope of his employment as a corporate officer of L. P. Gas Equipment and not as an individual.

■ Under Oklahoma law, "conversion" is a distinct act or dominion wrongfully exercised over another's personal property in denial of or inconsistent with his rights therein. *National Livestock Credit Corp. v. Schultz,* 425 F.Supp. 966 (W.D.Okl. 1976); *Wiley v. Safeway Stores, Inc.,* 400 F.Supp. 653 (N.D.Okl.1975); *Teleco, Inc. v. Southwestern Bell Telephone Co.,* 392 F.Supp. 692 (W.D.Okl.1974); *Davidson v. First Bank & Trust Co., Yale,* 559 P.2d 1228 (Okl.1976). In order to maintain an action for conversion, the complaining party must have an interest in the thing converted, provided such interest carries with it the right of possession at the time of the conversion. 18 Am.Jur.2d *Conversion* § 53 (1965); 89 C.J.S. *Trover & Conversion* § 72 (1955).

■ In the instant case, the Plaintiff has established by a preponderance of the evidence that it possesses a sufficient interest in the proceeds of the sale of the tanks so as to be entitled to maintain an action for conversion of said proceeds. The tanks sold by Scroggins to Propane Reserves were the tanks covered by Plaintiff's security agreements and Plaintiff's consent to the sale of the tanks was conditioned upon

Scroggins remitting the sale proceeds to Plaintiff. Under such circumstances, Plaintiff's security interests in the tanks were not waived unless the condition was performed. The evidence has clearly shown that the condition was not performed. Upon consideration of the evidence before it, the Court finds and concludes that L. P. Gas Equipment and Scroggins had an obligation to remit to Plaintiff the proceeds from the sales of the seven tanks. Said parties' deposit of those proceeds into the corporate bank account of L. P. Gas Equipment and the eventual use of the proceeds toward payment of other corporate obligations of L. P. Gas Equipment, constituted a conversion of the proceeds.

With regard to Scroggins' personal liability for such conversion, Oklahoma Courts have determined that an officer of a corporation can be personally liable for the wrongful use of funds entrusted to it if the officer was negligent in his duties as a corporate officer. *Scroeder v. Sanford-Felt Investments Co.*, 177 Okl. 54, 57 P.2d 601 (1936); *Preston-Thomas Construction, Inc. v. Central Leasing Corp.*, 518 P.2d 1125 (Okl.Ct.App.1973). In the instant case, the evidence has established that Scroggins actively participated in the sales of the tanks to Propane Reserves. The evidence has also shown that despite his obligation to remit the sales proceeds to the Plaintiff Scroggins deposited the proceeds into the corporate account of L. P. Gas Equipment. The Court finds that Scroggins' actions of depositing the proceeds into L. P. Gas Equipment's corporate account, whereby the proceeds were exposed to the possibility of being used for payment of other corporate obligations, constituted a failure by Scroggins to exercise ordinary care with regard to the proceeds. Under such circumstances, Scroggins, as a corporate officer of L. P. Gas Equipment, is personally liable to the Plaintiff for the conversion of the proceeds belonging to the Plaintiff. *See Schroeder v. Sanford-Felt Investments Co., supra; Preston-Thomas Construction, Inc. v. Central Leasing Corp., supra* ; Annot., Liability of corporate directors or officers for negligence in permitting conversion of property of third persons by corporation, 29 A.L.R.3d 660 (1970).

In view of the foregoing findings of fact and conclusions of law, the Court concludes that the Plaintiff is entitled to judgment against the Defendant Scroggins in the amount of $60,748.55, as prayed for.