905 F.2d 1362
 20 Bankr.Ct.Dec. 1004
 In re BUCYRUS GRAIN CO., INC., Debtor.
STATE BANK OF SPRING HILL, Appellant,
v.
Carl Edward ANDERSON, doing business as Anderson Brothers,
Robert Emmett Anderson, doing business as Anderson
Brothers, Appellees.
Kansas Bankers Association, Commodity Futures Trading
Commission, Amici Curiae.
 No. 89-3009.
 United States Court of Appeals,
Tenth Circuit.
 June 5, 1990.
 
 1
 David R. Smith, Thomas L. Griswold, with him on the brief, Payne & Jones, Chartered, Overland Park, Kan., for appellant.
 
 
 2
 Frederick B. Farmer, Lowe, Farmer, Bacon & Roe, Olathe, Kan., for appellees.
 
 
 3
 Joanne T. Medero, Gen. Counsel, Jay L. Witkin, Deputy Gen. Counsel, James T. Kelly, Asst. Gen. Counsel, Gracemary Rizzo, Atty., and of counsel, Pat G. Nicolette, Deputy Gen. Counsel, Commodity Futures Trading Com'n, Washington, D.C., filed an amicus curiae brief for Commodity Futures Trading Com'n.
 
 
 4
 Anne L. Baker, Eidson, Lewis, Porter & Haynes, Topeka, Kan., filed an amicus curiae brief for Kan. Bankers Ass'n.
 
 
 5
 Before TACHA, Circuit Judge, SETH, Senior Circuit Judge, and KANE, Senior District Judge.*
 
 
 6
 KANE, Senior District Judge.
 
 
 7
 This is an appeal from a decision of the district court sitting as an appellate court in bankruptcy. The district court determined a grain elevator that had accepted money from two farmers to place an order for commodity futures contracts was a "futures commission merchant," and thus a "commodities broker" under the Bankruptcy Code. The court then found the farmers were "customers" of the broker and that certain funds in the grain elevator's checking account were "customer property." Certain provisions in Chapter IV of the Bankruptcy Code, which govern the liquidation of commodities brokers, give priority to the claims of customers of commodities brokers. Thus, the district court, reversing the bankruptcy court's earlier determination that such provisions did not apply, held that the farmers' claim was entitled to priority over the claim of the bank in which the grain elevator's account was located, even though the bank held a security interest in the account. The district court then remanded the case to the bankruptcy court for a determination of the value of the farmers' claim. The bank now appeals. We dismiss the appeal.
 
 
 8
 There are several barriers to our having jurisdiction in this case. First, the bank has appealed the district court's decision even though the case was remanded for additional proceedings. We have held that there is no jurisdiction over an appeal when the district court has remanded the case for "significant further proceedings." In re Commercial Contractors, 771 F.2d 1373, 1375 (10th Cir.1985). Second, even assuming that the remand did not entail "significant further proceedings," the bank did not file its notice of appeal until after the bankruptcy court entered its decision on remand. If the district court's opinion was final when entered, the bank's notice of appeal was untimely. Finally, if the proceedings on remand were significant, the bank did not first appeal the bankruptcy court's decision on remand to the district court.[1] Consequently, this appeal is dismissed for lack of jurisdiction.
 
 
 9
 I. Facts.
 
 
 10
 The Bucyrus Grain Company was a Kansas corporation doing business as a grain elevator. On October 26, 1983, two customers of Bucyrus, Carl and Emmett Anderson, approached the company about purchasing soybean futures contracts. The Anderson Brothers wanted to purchase the contracts through Bucyrus so they could take advantage of special margin rates available to Bucyrus. The Anderson Brothers delivered $25,000 to Bucyrus, and Bucyrus' president, James Creamer, purchased five July, 1984 soybean futures contracts in Bucyrus' name through the brokerage firm of Drexel, Burnham, Lambert, Inc. Bucyrus regularly used Drexel, Burnham and another brokerage firm, Carghill Investors Services, to purchase its futures contracts. Bucyrus had also made purchases of contracts on behalf of other customers of the company.
 
 
 11
 In January, 1984, Bucyrus liquidated its contracts and the Anderson Brothers' contracts in July soybeans. On March 29, 1984, Carghill wired $27,000 into Bucyrus' account at the State Bank of Spring Hill. On April 4, 1984, Carghill wired an additional $30,026 into the account, after having stopped payment on a check to Bucyrus for this amount. It is unclear whether these funds represented part of the proceeds from the sales of Bucyrus' soybean contracts.
 
 
 12
 On March 30, 1984, Bucyrus filed for bankruptcy under Chapter 7 of the Bankruptcy Code. Bucyrus attempted to pay a number of its customers for grain stored at the Bucyrus elevator; however, the bank refused to honor these checks when presented for payment. At the time it filed its bankruptcy petition, Bucyrus had a positive balance in its checking account of $46,421.20, although it owed the bank over $700,000. The bank was able to recover some of this debt by taking possession of certain collateral it held as security, reducing Bucyrus' outstanding debt to $458,198.65.
 
 
 13
 Shortly thereafter, the bank filed a motion for relief from the stay in bankruptcy to permit it to setoff the funds in Bucyrus' account against Bucyrus' outstanding debt to it, or in the alternative, to obtain the funds in light of its perfected security interest in the account. A number of parties opposed the bank's motion. The Anderson Brothers claimed they were entitled to the funds under Sec. 766(h) of the Bankruptcy Code relating to the liquidation of commodities brokers. Finally, certain customers of Bucyrus claimed an interest in the funds under a state law conversion theory.
 
 
 14
 On November 20, 1986, the bankruptcy court granted the bank's motion. See State Bank of Spring Hill v. Bucyrus Grain Co. (In re Bucyrus Grain Co.), 67 B.R. 336 (Bankr.D.Kan.1986). It held the bank was entitled to setoff the funds under Sec. 553(a) of the Code, and the bank had a perfected security interest in the funds, which were proceeds from the transfer of secured collateral. It denied the Anderson Brothers' claim to the funds, finding they had not established entitlement under Sec. 766(h) of the Code. It further rejected the other customers' claim that they were entitled to the funds under state law. The Anderson Brothers then appealed this determination.
 
 
 15
 Upon review by the district court, the bankruptcy court's decision was reversed. In its unpublished order entered June 13, 1988, relying on the only existent case interpreting the term commodities broker, In re Co Petro Marketing Group, Inc., 680 F.2d 566 (9th Cir.1982), the district court held Bucyrus was in fact a futures commission merchant, included within the term "commodities broker." It went on to conclude that the Anderson Brothers were customers of Bucyrus and they were entitled to the protection of Subchapter VII of Chapter 7 of the Bankruptcy Code. Accordingly, the Anderson Brothers were entitled to priority over other claims to the funds in Bucyrus' checking account, even though they could not directly trace their claim to those funds. The court then remanded to the bankruptcy court for a determination of the value of the Anderson Brothers' claim and whether other creditors could assert similar claims to the fund.
 
 
 16
 On December 12, 1988, the bankruptcy court issued its decision on remand. It ruled that the Anderson Brothers were the only customers of Bucyrus at the time of the filing of the bankruptcy petition with a claim as commodity customers of a futures commission merchant, and they were entitled to recover the entire amount of their claim, $25,000, plus interest. On January 3, 1989, the bank filed its notice of appeal in this case.
 
 
 17
 II. Jurisdiction.
 
 
 18
 The issue is whether this court has jurisdiction over this appeal. Jurisdiction over bankruptcy appeals is governed by 28 U.S.C. Sec. 158. This statute provides in relevant part:
 
 
 19
 (a) The district court of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.
 
 
 20
 . . . . .
 
 
 21
 (d) The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) [relating to Bankruptcy Appellate Panels] of this section.
 
 
 22
 28 U.S.C. Sec. 158(a), (d). Although the Anderson Brothers made no jurisdictional objection to the appeal, we raised the issue sua sponte and ordered additional briefs.
 
 
 23
 The majority of the issues raised by the bank relate to the district court's June 13, 1988 decision in which it reversed the bankruptcy court's ruling in favor of the bank and held that the Anderson Brothers' claim was entitled to priority. In that decision, the district court remanded the case to the bankruptcy court for determination of the amount of the Anderson Brothers' claim and whether other creditors could assert similar claims.
 
 
 24
 In Homa, Ltd. v. Stone (In re Commercial Contractors, Inc.), 771 F.2d 1373 (10th Cir.1985), we addressed the finality of a district court decision in which the court reversed the bankruptcy court and remanded for further proceedings. Noting a division between the circuits, we followed the Seventh Circuit's reasoning in In re Riggsby, 745 F.2d 1153, 1156 (7th Cir.1984), holding that " 'a decision of the district court on appeal from a bankruptcy judge's final order is not itself final if the decision remands the case to the bankruptcy judge for significant further proceedings....' " In re Commercial Contractors, Inc., 771 F.2d at 1375. We acknowledged that other circuits have ruled that a district court order affirming or reversing a bankruptcy court decision is final for the purposes of appeal under 28 U.S.C. Sec. 158(d), but reasoned that our position "furthers the policy underlying the finality doctrine by controlling piecemeal adjudication and eliminating the delays caused by the appeal of interlocutory decisions," in keeping with congressional policy to narrow the availability of bankruptcy appeals as reflected in the 1978 Act. We have followed the rationale of In re Commercial Contractors, Inc. in other appeals. See, e.g., Magic Circle Energy 1981-A Drilling Program v. Lindsey (In re Magic Circle Energy Corp.), 889 F.2d 950, 953 (10th Cir.1989); MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1395 n. 1 (10th Cir.1987).
 
 
 25
 We have not addressed in detail what constitutes "significant further proceedings." In In re Commercial Contractors, Inc., the case was remanded to the bankruptcy court for de novo hearings which constituted significant further proceedings. Recently in Coats State Bank v. Grey, 902 F.2d 1479 (10th Cir.1990), we held that a remand for additional findings of fact concerning the dispositive issue in the case was a remand for "significant further proceedings." Courts in other circuits have attempted to clarify what is meant by this phrase. Some have held that significant further proceedings occur when the bankruptcy court undertakes more than a mere "ministerial" duty, see M.S.V., Inc. v. Bank of Boston (In re M.S.V., Inc.), 892 F.2d 5, 6 (1st Cir.1989), or its activities involve the " 'exercise of considerable judicial discretion' ", see Schneider v. United States Dept. of Agric. (In re Schneider), 873 F.2d 1155, 1157 (8th Cir.1989) (citation omitted). When the matters on remand are " 'unlikely either to generate a new appeal or to affect the issue that the disappointed party wants to raise on appeal from the order of remand,' " see Kellogg v. United States Dept. of Energy (In re Compton), 889 F.2d 1104, 1107 (Temp.Emer.Ct.App.1989) (citation omitted), the district court's decision is considered final.
 
 
 26
 In the few cases permitting an appeal despite a remand, the matters to be decided by the bankruptcy court have been computational, often involving the calculation of statutory interest or damages. See, e.g., United States Trustee v. Prines (In re Prines), 867 F.2d 478, 481 (8th Cir.1989) (remand for award of statutory interest). But see In re Schneider, 873 F.2d at 1157 (remand for calculation of proper fixed interest rate prevents finality); In re Gould & Eberhart Gear Mach. Corp., 852 F.2d 26, 29 (1st Cir.1988). In other cases, courts have allowed an appeal by finding that the matters on remand constituted a separate "judicial unit," thereby enabling the appeal of a distinct, unrelated matter. See, e.g., In re F/S Airlease II, Inc., 844 F.2d 99, 104-05 (3d Cir.1988) (appeal of broker's appointment under Sec. 327(a) proper notwithstanding remand for determination of his compensation); In re Morse Elec. Co., 805 F.2d 262, 265 (7th Cir.1986) (determination of validity of claim a final order, even though priority and amount of claim to be decided on remand). This view, however, is inconsistent with our view of the concept of finality. See In re Magic Circle Energy Corp., 889 F.2d at 953 (adhering to the "traditional view" that the district court's decision must end the litigation and leave nothing to be done but to execute the judgment).
 
 
 27
 In this case, the district court remanded to the bankruptcy court for a determination of the amount of the Anderson Brothers' claim. To make this finding, the bankruptcy court was also required to consider whether there were other customers of Bucyrus who could assert a similar claim to the funds in Bucyrus' bank account. These are more than mere "ministerial" computations involving little judicial discretion. Moreover, the bank is appealing the bankruptcy court's decision on remand as part of this appeal, further indicating the issues on remand were significant. Given that these proceedings involved considerable factfinding and involved an issue later appealed by the bank, we conclude that the matters on remand constituted "significant further proceedings," and that this appeal was premature.
 
 
 28
 There is another problem that precludes jurisdiction in this case. The district court's decision was entered on June 13, 1988. Yet the bank did not file its notice of appeal of this decision until January 3, 1989, after the bankruptcy court entered its decision on remand and well outside of the thirty-day filing period. See Fed.R.App.P. 4(a)(1). Since the timely filing of a notice of appeal is mandatory and jurisdictional, National City Bank v. 6 & 40 Inv. Group, Inc. (In re 6 & 40 Inv. Group, Inc.), 752 F.2d 515, 515 (10th Cir.1985), the appeal is untimely and must be dismissed.
 
 
 29
 The bank argues, however, that the district court's decision was not final until the bankruptcy court entered its decision on remand on December 12, 1988. Again, accepting this argument as true, this appeal is still defective. If the district court's June 13, 1988 decision was not final because significant further proceedings remained on remand, the proper procedural course for the bank is to appeal the bankruptcy court's decision on remand to the district court first. Then, if the district court rules unfavorably, the bank could appeal to this court. See generally, In re Compton Corp., 889 F.2d at 1109.
 
 
 30
 Instead, the bank has directly appealed the bankruptcy court's adverse decision on remand to the court of appeals. This is improper under 28 U.S.C. Sec. 158(d). That statute limits the jurisdiction of the courts of appeal to final decisions of the district court or a bankruptcy appellate panel. There is no provision for direct appeal of a bankruptcy court decision to the court of appeals. For all the reasons discussed above, this appeal is dismissed for lack of jurisdiction.
 
 
 
 *
 Honorable John L. Kane, Jr., United States Senior District Judge for the District of Colorado, sitting by designation
 
 
 [1]
 At oral argument the court was advised that the bank indeed did file a notice of appeal with the district court as a hedge and that the district court has stayed proceedings on that appeal until we decide the questions before us