57 F.3d 941
 32 Fed.R.Serv.3d 1023
 BRUMARK CORPORATION, a Delaware Corporation; Bruce
Steinberg, an individual; Imperial Lease Fund, Ltd., a
California limited partnership; Brumark Imperial Natural
Gas and Oil, Inc., a California corporation, its General
Partner; Steinberg Associates, Ltd.--1979 Oil and Gas
Program, a California limited partnership; Brumark
Corporation, General Partner; Bruce Steinberg, General
Partner, Plaintiffs-Appellants,
v.
SAMSON RESOURCES CORPORATION, an Oklahoma corporation; Dyco
Petroleum Corporation, a Minnesota Corporation; Premier Gas
Company; Samson Natural Gas Company, an Oklahoma
corporation; Dyco Gas Marketing, Inc., a wholly owned
subsidiary of Dyco Petroleum Corporation, Defendants-Appellees.
 Nos. 94-6113, 94-6174.
 United States Court of Appeals,
Tenth Circuit.
 June 13, 1995.
 
 Matthew Standard (James A. Kirk with him, on the briefs) of Kirk & Chaney, Oklahoma City, OK, for appellees.
 Richard A. Grimes (Jerry Day with him, on the briefs) of Grimes, Gelders, Anderson & Day, Oklahoma City, OK, for appellants.
 Before ANDERSON, BARRETT and BALDOCK, Circuit Judges.
 BARRETT, Senior Circuit Judge.
 
 
 1
 In these consolidated appeals, we review an order of the district court dated February 25, 1994, granting a motion to dismiss filed by Samson Resources Company, an Oklahoma corporation, et al. (Samson or appellees), against Brumark Corporation, et al., (appellants), and an order of the district court dated March 29, 1994, denying appellants' motion for reconsideration or alternative relief.
 
 Facts
 
 2
 Appellants owned oil and gas leasehold interests in Section 8-T12N-R26W, Roger Mills County, Oklahoma. In the early 1980's, a well, designated as Davis # 1-8, was drilled in Section 8, completed as a commercial natural gas producer operated by Samson. After Davis # 1-8 was completed, Dyco Petroleum Corporation (Dyco) completed a well designated as Davis # 1-7 in adjoining Section 7. Samson subsequently acquired Dyco's leasehold interest in Sections 7 and 8.
 
 
 3
 On March 18, 1986, the Oklahoma Corporation Commission (OCC) issued Order No. 294864 (the order), classifying eight sections of land in Roger Mills County, including Sections 7 and 8, as a special allocated pool.[1] The order established detailed field rules governing production, whereby OCC would set monthly production levels for each well in the pool based upon the results of an annual flow test, market demand, and relative ownership in the pool. (Appellants' Appendix at 34-36).
 
 
 4
 In 1988, a second gas well, Tucker # 2-8, was drilled and completed in Section 8 by Steinberg Associates, Ltd.
 
 
 5
 In April, 1993, Brumark, on behalf of itself, Steinberg Associates, Ltd., and others, requested that Samson curtail production at the Davis # 1-7 well immediately, to prevent it from taking an undue proportion from the common pool through drainage of Section 8. When Samson refused, appellants filed this suit, alleging that Samson had violated duties imposed by the OCC order. Appellants sought damages for conversion.
 
 
 6
 Appellants' Amended Complaint alleged that: appellees were depriving them of their fair share of gas, and hence were engaging in conversion; appellees had manipulated the allowable procedures under the OCC's order and had misrepresented the production of the Davis # 1-7 well; appellees had breached their duty not to take an undue proportion of oil and gas from the common supply; and appellees were in breach of their fiduciary duty to appellants as common owners of the oil and gas interests in the common supply. Appellants did not challenge the validity of the order or allege that Samson was producing more than the monthly production levels set by the OCC under the order.[2] Id. at p. 8.
 
 
 7
 Appellees moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6), contending that since appellants' action required them [appellants] to establish appellees' liability under the order, and since establishing such liability required a determination of the order, the matter was within the exclusive province of the OCC; thus, the district court should defer to the OCC as the proper forum to settle the dispute.
 
 
 8
 On February 25, 1994, the district court entered an order granting appellees' motion to dismiss, finding/concluding, inter alia: ultimately, appellants' cause of action is designed to enforce the order; no breach of duty or obligations alleged by appellants flows from a private agreement independent of the order; the underlying theory of appellants' claims is that the order is no longer an effective instrument to allocate the relative rights of the parties; central to this inquiry is the integrity of the order itself; and since any violation of the order would necessarily affect the correlative rights of the common owners and undermine the OCC's ability to safeguard public rights, the court must defer to the OCC as the appropriate forum for adjudication.
 
 
 9
 Appellants moved for reconsideration or alternative relief. On March 29, 1994, the district court entered an order denying appellants' motion, finding/concluding, inter alia: a motion for reconsideration is an extreme remedy to be granted in rare circumstances; the decision to grant reconsideration is committed to the sound discretion of the district court; in exercising that discretion, courts consider whether there has been an intervening change in the law, new evidence, or the need to correct clear error or to prevent manifest injustice; none of these three factors has occurred or is present; and appellants have failed to present any rationale for reconsideration save their disagreement with the court's conclusion.
 
 
 10
 The district court also rejected appellants' request that it stay the proceedings to toll the relevant statute of limitations, concluding that there were no proceedings then presently before the court and that the appellants had not presented any compelling reasons as to why the court should toll the statute of limitations on their claims.
 
 Issues on Appeal
 
 11
 Appellants contend in No. 94-6113 that: (1) the district court has subject matter jurisdiction to entertain appellants' action for money damages predicated on the violation of duties owed by appellees; (2) the district court is not precluded by state law from adjudicating the issue of a violation of the OCC's order; assuming that the district court was correct in deferring to the OCC on the question of violation of the order, the court should have stayed or suspended appellants' case pending resolution by the OCC, rather than dismissing the case for lack of jurisdiction; and (3) the district court erred in finding that it lacked jurisdiction to hear a claim for conversion.
 
 
 12
 Appellants contend in No. 94-6174 that the district court erred in denying their motion for reconsideration or alternative relief.
 
 
 13
 We review the district court's order of dismissal for lack of subject matter jurisdiction or failure to state a claim upon which relief can be granted de novo. Maddick v. United States, 978 F.2d 614, 615 (10th Cir.1992); Johnson v. Thompson, 971 F.2d 1487, 1492 (10th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993).
 
 Disposition
 No. 94-6113
 I.
 
 14
 Appellants contend that the district court has subject matter jurisdiction to entertain their action for monetary damages predicated upon appellees' violation of duties appellees owed to them.
 
 
 15
 Appellants argue that since the OCC has already adjudicated the correlative rights of the parties under the order, they may proceed with their tort action against appellees in the district court. Appellants argue that they are not seeking relief which impinges on the exclusive authority of the OCC, but rather they seek to enforce rights private in nature arising from the appellees' breach of "the duties owed to owners of oil and gas interests in a common source of supply of gas regulated by the Commission." (Brief for Appellants at 6).
 
 
 16
 Oklahoma's Oil and Gas Conservation Act, 52 Okla.Stat.Ann. Sec. 81, et seq., was established to prevent waste and to protect correlative rights. Atlantic Richfield Co. v. Tomlinson, 859 P.2d 1088, 1095 (Okla.1993). In Kingwood Oil Co. v. Corporation Commission, 396 P.2d 1008, 1010 (Okla.1964), the Oklahoma Supreme Court stated:
 
 
 17
 The term 'correlative rights' has been defined as a convenient method of 'indicating that each owner of land in a common source of supply of oil and gas has legal privileges as against other owners of land therein to take oil and gas therefrom by lawful operations conducted on his own land, limited, however, by duties to other land owners not to injure the source of supply and by duties not to take an undue proportion of the oil and gas.' Summers Oil and Gas, Vol. 1, Sec. 63.
 
 
 18
 "The term correlative rights refers to all the rights and duties which exist between mineral owners with regard to a common source of hydrocarbon supply." Pelican Production Corp. v. Wishbone Oil & Gas, Inc., 746 P.2d 209, 211-12 (Okla.App.1987).
 
 
 19
 The OCC "has the sole authority to adjust the equities and to protect the correlative rights of interested parties." Woods Petroleum Corp. v. Sledge, 632 P.2d 393, 396 (Okla.1981). The OCC's power to protect correlative rights is governed by the terms of 52 Okla.Stat.Ann. Sec. 87.1. In Samson Resources Co. v. Corporation Commission, 702 P.2d 19, 22 (Okla.1985), the Oklahoma Supreme Court addressed this statute:
 
 
 20
 Under this statute the Commission properly exercises its power to protect correlative rights by the establishment of spacing units and the setting of allowable production. This allows protection of the public interest in orderly development and production of resources and the prevention of the drilling of unnecessary wells. The setting of allowables on production insures that no one party or parties take an undue proportion of the oil and gas.
 
 
 21
 In Nilsen v. Ports of Call Oil Co., 711 P.2d 98, 103 (Okla.1985), the court observed that:
 
 
 22
 where the parties, such as here, are conducting operations under a Commission imposed pooling order, and the question sought to be litigated arises from the construction of that pooling order, the proper forum to decide the question of construction is the Corporation Commission.
 
 
 23
 In Leck v. Continental Oil Co., 800 P.2d 224, 226 (Okla.1989) (Leck I), the court, in response to certified questions of law from this court, after observing that 52 Okla.Stat.Ann. Sec. 87.1 vests jurisdiction in the OCC over public right disputes relative to a common source of supply involving orders relating to pooling, well spacing, and drilling units, as distinguished from disputes over private rights, explained the difference:
 
 
 24
 Clearly, the correlative rights of all mineral rights owners in the common source of supply for the subject unit fall within the parameters of public rights when a unitization order, pooling order, or order setting the allowables on the unit's well were concerned. Thus, when the appellants applied for an order to restrict the allowable on the Wosika # 1 well "in order to protect the correlative rights of all parties to the common source of supply," they properly brought the application before the commission.
 
 
 25
 However, when a dispute arises between a lessor and a lessee regarding the lessee's breach of an implied covenant, the rights involved enter the realm of the private world and are disputes for the district court to resolve because they involve issues concerning the construction of a private contract between the parties.[3] Therefore, the appellants' action for damages for the lessee's alleged breach of an implied covenant to protect from drainage is a private action arising from their contract and does not involve the correlative rights of the "public."
 
 
 26
 The OCC's right to regulate the production of oil and gas pursuant to 52 Okla.Stat.Ann. Sec. 87.1, which permits the OCC to require separate owners of tracts or interests to pool and develop their lands in spacing units, is limited to situations where the common rights to drill within an existing spacing unit and separate or undivided ownership exists. Helmerich & Payne, Inc. v. Corporation Commission, 532 P.2d 419 (Okla.1975). In this case, OCC Order No. 294864 established detailed field rules governing the amount of production allowed from wells drilled to an identified common source of supply. (Appellants' Appendix at 29-38). The OCC's field rules provide, inter alia, (1) the OCC shall establish a monthly amount of production from each well based upon the results of annual flow test, market demand and acreage ownership, (2) the OCC must witness and approve the annual flow test and any owner has the right to witness the test, and (3) should any well within the pool produce more or less than the OCC's allowed production in a month, that shall be considered when the OCC sets the well's allowed production in subsequent months. Id. at 35-36.
 
 
 27
 There is no "bright line" applicable in the determination of the jurisdictional issue presented here under Oklahoma law. In Slawson v. Mack Oil Co., 983 F.2d 978 (10th Cir.1992), we held that the federal district court erred in dismissing Slawson's suit seeking to quiet title to his claimed interest in an oil and gas well in Oklahoma and to obtain an accounting of the production from the well on the ground of lack of subject matter jurisdiction. We observed that while the OCC has exclusive jurisdiction to determine questions of compliance and/or construction, adjustment, modification or suspension of its orders, the district court "clearly has jurisdiction to adjudicate the legal effect (as distinguished from the continuing effectiveness) of a Commission order or of an order of a court of competent jurisdiction upon title to land." Id. at 982 (quoting Nilsen, 711 P.2d at 101). We noted that Nilsen involved not the legal effect of the OCC order, but a determination whether the drilling operation complied with the requirements of the drilling order. Slawson distinguished, just as did the courts in Eason Oil Co. v. Howard Engineering, 801 P.2d 710 (Okla.1990) and Amoco Production Co. v. Corporation Commission, 751 P.2d 203 (Okla.Ct.App.1986), the difference between the determination of the legal effect of OCC spacing and pooling orders and the interpretation or clarification of such orders.
 
 
 28
 In GHK Exploration Co. v. Tenneco Oil Co., 847 F.2d 650, 652 (10th Cir.1988), we observed, interpreting Oklahoma law:
 
 
 29
 .. the Commission has jurisdiction to interpret, clarify, amend and supplement its orders and to resolve any challenges to the "public issue of conservation of oil and gas." ... The courts, on the other hand, have jurisdiction to enforce the Commission's orders and to resolve the "private rights" of the parties that are usually created by private operating agreement under a forced pooling order.
 
 
 30
 On rehearing in GHK Exploration Co. v. Tenneco Oil Co., 857 F.2d 1388 (10th Cir.1988), we held that the OCC had exclusive jurisdiction to determine whether a party had elected to participate in a forced pooling order and whether the well-drilling costs allocated to the participants of the forced pool unit were proper and reasonable. We cited to Constantin v. Martin, 216 F.2d 312 (10th Cir.1954) for the proposition that the OCC has exclusive jurisdiction to interpret its unitization order, subject to review only when all administrative remedies have been exhausted.
 
 
 31
 In Leede Oil & Gas v. Corporation Com'n, 747 P.2d 294 (Okla.1987), the court recognized that the OCC was statutorily empowered to monitor the reasonableness of well costs under a forced pooling order, protective of the rights of all parties affected by the pooling order, but:
 
 
 32
 It is equally clear that, once the parties have reached subsequent agreement among themselves regarding the rights and obligations due each from and to the others in the development of a unit well, the agreement between the parties concerning their rights is enforceable in the district court.
 
 
 33
 Id. at 297.
 
 
 34
 In Samson Resources v. Okl. Corp. Com'n, 742 P.2d 1114 (Okla.1987), the court held that the OCC, rather than the state district court, had jurisdiction to decide whether Samson had timely elected under a forced-pooling order of the OCC to participate in the development of an oil and gas well. Samson relied on Tenneco Oil Co. v. El Paso Natural Gas, 687 P.2d 1049 (Okla.1984) for the proposition that the OCC had no jurisdiction to entertain disputes over the status of elections under pooling orders. The court held that such a construction was too broad:
 
 
 35
 In Tenneco, as in the case at bar, the issue before this Court was the proper forum for deciding whether one of the parties had properly elected to participate in the drilling of a well. But unlike the case before us, the parties in Tenneco had entered into a private operating agreement which had to be construed in order to determine whether the election was valid. This court found that the dispute involved the private rights of the parties, and that "no attempt [was] made by any party ... to change or challenge the public issue of conservation of oil and gas," and therefore the proper forum was the district court. Tenneco, 687 P.2d at 1054-1055.
 
 
 36
 Samson, 742 P.2d at 1115-16.
 
 
 37
 Applying these standards, we hold that the district court did not err in granting appellees' motion to dismiss.
 
 
 38
 Significantly, appellants have conceded that: "[i]t would be beyond the authority of a district court to either attempt to enter such an order [to protect correlative rights] or to attack the Commission's power to have done so," (Brief for Appellants at 9); "[t]he district court is not possessed of the government's power to determine how to protect correlative rights. In Oklahoma, that governmental function is vested in the Commission," id.; and "[t]he commission is the appropriate forum to adjudicate equities of oil and gas owners and to protect their correlative rights.... Admittedly, such an adjudication took place through the entry of Order No. 294864." Id. at 10.
 
 
 39
 The questions sought to be litigated here clearly involved the correlative rights of the parties. As set forth, supra, appellants alleged that: appellees were depriving them of their fair share of gas, and hence were engaging in conversion; appellees had manipulated the allowable procedures under the OCC's order and had misrepresented the production of the Davis # 1-7 well; appellees had breached their duty not to take an undue proportion of gas from the common supply; and appellees were in breach of their fiduciary duty to appellants as common owners of the oil and gas interests in the common supply. Each of these contentions deals with the compliance and/or construction, adjustment or modification of the OCC's order.[3]
 
 
 40
 At no time have appellants alleged that their grievances arose from a private agreement with appellees. The disputes here relate to correlative rights subject to the jurisdiction of the OCC. See Woods Petroleum Corp., 632 P.2d at 396. Appellants' claims constitute a prohibited collateral attack on OCC Order No. 294864. We agree with appellees' argument that "In this case, Brumark (appellants) challenges the production amounts set and allowed under a Corporation Commission order. Brumark does not claim that Samson had a duty arising from some private agreement, or from some other source, to stimulate production from Section 8 to prevent drainage. Instead, Brumark claimed that Samson was manipulating the procedure established by OCC Order No. 294864 to artificially inflate Section 7's allowable production. Thus, Brumark was attacking the monthly production amounts authorized by the Commission for Section 7." (Appellees' Brief at 6) (emphasis in original).
 
 
 41
 Here, the questions sought to be litigated arose from the construction of OCC Order No. 294864. Thus, "the proper forum to decide the question of construction is the Corporation Commission." Nilsen, 711 P.2d at 103.
 
 II.
 
 42
 Appellants argue that the district court was not precluded by state law from adjudicating the issue of a violation of an order of the OCC. Appellants further argue that, assuming the district court was correct in deferring to the OCC on the question of the violation of the order, the correct action in response thereto would have been to stay or suspend the action pending the OCC's resolution of the question rather than dismissal for lack of jurisdiction. This contention was advanced by appellants in their motion for reconsideration or alternative relief.
 
 
 43
 We review under an abuse of discretion standard the district court's decision whether to apply primary jurisdiction and refer the case to the OCC. Marshall v. El Paso Natural Gas Co., 874 F.2d 1373, 1377 (10th Cir.1989).
 
 
 44
 No abuse of discretion occurred here. The motion for reconsideration or alternative relief was untimely filed. See, infra, No. 94-6174, I.
 
 III.
 
 45
 Appellants contend that the district court erred in its determination that it lacked jurisdiction to hear a claim for conversion.
 
 
 46
 Conversion is defined in Oklahoma as any act of dominion wrongfully exercised over personalty of another which is inconsistent with that party's rights therein. ITT Indus. Credit Co. v. L-P Gas Equipment, Inc., 453 F.Supp. 671 (W.D.Okla.1978). Inasmuch as the OCC "has sole authority to adjust the equities and to protect the correlative rights of interested parties," Woods Petroleum Corp., 632 P.2d at 396, and "[t]he term correlative rights refers to all the rights and duties which exist between mineral owners with regard to common source of hydrocarbon supply," Pelican Production Corp., 746 P.2d at 211, we hold that the district court did not err in declining to hear appellants' claim for conversion.
 
 No. 94-6174
 
 47
 On February 25, 1994, the district court entered its order granting appellees' motion to dismiss appellants' amended complaint. On March 9, 1994, 13 days later, appellants filed/served a motion for reconsideration or alternative relief. On March 25, 1995, appellants filed a notice of appeal from the district court's order of February 25, 1994. We designated that appeal No. 94-6113. Under Fed.R.App.P. 4(a)(4), (effective Dec. 1, 1993), that appeal would have been abated pending disposition of the motion for reconsideration, or alternative relief, if timely filed ( ... the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion).
 
 
 48
 On March 29, 1994, the district court entered an order denying appellants' motion for reconsideration or alternative relief. On April 29, 1994, 31 days later, appellants filed an amended notice of appeal from the district court's order of February 25, 1994, and the district court's order of March 29, 1994. We treated appellants' amended appeal as a separate appeal and designated it No. 94-6174.
 
 
 49
 On July 27, 1994, we issued a show cause order notifying counsel that we were considering summary dismissal of No. 94-6174 for lack of jurisdiction. We directed the parties to file simultaneous memorandum briefs addressing:
 
 
 50
 Whether this court has jurisdiction to review the March 29, 1994 order of the district court denying the plaintiffs' motion for reconsideration where the notice of appeal was filed 31 days after the entry of the order? See Fed.R.App. 4(a).
 
 
 51
 Within their memorandum brief, appellants argue that we have jurisdiction to review the district court's order of March 29, 1994, based on the excusable neglect of counsel, a mathematical error in computation of time. Within their memorandum brief, appellees argue that an appeal must be filed within 30 days under Rule 4(a)(4) and that appellants' appeal was untimely because it was filed 31 days after the district court's order of March 29, 1994. Thereafter, we entered an order in which we reserved judgment on the jurisdictional issue raised in our show cause order and consolidated appeals Nos. 94-6113 and 94-6174 for disposition on the merits.
 
 I.
 
 52
 Appellants contend that the district court erred in denying their motion for reconsideration and/or for alternative relief.
 
 
 53
 Appellants do not challenge the district court's findings that they failed to meet any of the three requirements for granting reconsideration, i.e., an intervening change in the controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice. Rather, appellants simply argue that the district court erred in denying their motion because: "the act of the District Court in dismissing [their] complaint can result in adverse consequences relating to statutes of limitations and issue preclusion doctrines. Clearly, such drastic action would result in manifest injustice to the rights of Appellants to enforce the duties imposed upon the Appellees by the Order of the Commission." (Brief for Appellants at 3-4). Appellants also argue that the action of dismissal "potentially prejudices" their right "to proceed in the action after the Commission has entered its ruling." Id. at 4.
 
 
 54
 Appellees respond that "[t]he denial of the motion to reconsider is not properly before the Court because Brumark's [appellants'] appeal was untimely." (Appellees' Brief at 2). We agree.
 
 
 55
 Under Fed.R.App.P. 4(a)(1), an appeal in a civil case "must be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from." The "taking of an appeal within the prescribed time is mandatory and jurisdictional." Budinich v. Becton Dickinson & Co., 486 U.S. 196, 203, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178 (1988); In re Bucyrus Grain Co., Inc., 905 F.2d 1362 (10th Cir.1990); Gooch v. Skelly Oil Co., 493 F.2d 366 (10th Cir.), cert. denied, 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 270 (1974). "A court lacks discretion to consider the merits of a case over which it is without jurisdiction." Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379-80, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981).
 
 
 56
 Federal Rules of Appellate Procedure 26(b) prohibits this court from enlarging the time for filing a notice of appeal. Savage v. Cache Valley Dairy Ass'n, 737 F.2d 887, 889 (10th Cir.1984). However, a motion for extension of time within which to file a notice of appeal based upon a claim of excusable neglect is a matter to be timely addressed to the district court in accordance with Fed.R.App.P. 4(a)(5). Id. See also, 28 U.S.C. Sec. 2107. Here, appellants failed to request an extension of time in the district court.
 
 
 57
 Inasmuch as appellants did not file their notice of appeal until April 29, 1994, 31 days after the district court's order of March 29, 1994, we are without jurisdiction over this appeal. Collard v. United States, 10 F.3d 718, 720 (10th Cir.1993).
 
 II.
 
 58
 Although not raised by the parties, we also believe that we are without jurisdiction to consider this appeal inasmuch as appellants' motion for reconsideration and/or for alternative relief was not timely filed.
 
 
 59
 Federal Rules of Civil Procedure 59(e) provides that "[a] motion for a new trial shall be served not later than 10 days after the entry of judgment." In Hilst v. Bowen, 874 F.2d 725, 726 (10th Cir.1989), we held that a motion for reconsideration is properly treated as a Rule 59(e) motion if timely filed and, if so, "the time for appeal begins to run from the entry of the order disposing of the motion." Thus, the "amended" notice of appeal could be timely only if the Rule 59(e) motion was timely, thereby tolling the time for appeal pursuant to Rule 4(a)(4).
 
 
 60
 As set forth, supra, the district court entered its order granting appellees' motion to dismiss on February 25, 1994. Thirteen days, later on March 9, 1994, appellants filed their motion for reconsideration and/or alternative relief. This motion was not filed within the ten-day limit prescribed by Rule 59(e). Assuming that the motion was not served prior to the date of its filing, the district court lacked jurisdiction to entertain it. See Brock v. Citizens Bank of Clovis, 841 F.2d 344, 348 (10th Cir.), cert. denied, 488 U.S. 829, 109 S.Ct. 82, 102 L.Ed.2d 59 (1988) ("Because the Secretary's motion was not filed until thirteen days after entry of the findings of fact and conclusions of law, the district court correctly denied relief on jurisdictional grounds.").
 
 
 61
 We deny appellants' post-judgment "Motion for Certification of Questions of State Law to Highest State Court and Stay Pending State Court's Decision."
 
 
 62
 AFFIRMED.
 
 
 
 [1]
 The OCC's order of March 18, 1986, created a "Special Allocated Pool" entered pursuant to 52 Okla.Stat.Ann. Sec. 87.1(e) in order "... to avoid the drilling of unnecessary wells (waste), or to protect correlative rights." The order created field rules for drilling and production within the pool covering the Morrow common source of supply of gas in relation to drilling and spacing units of 640 acres each, previously created by the OCC
 
 
 [2]
 On appeal, appellants contend that the matters alleged in their Amended Complaint involve a "private rights" dispute exclusively reserved for the courts, based upon a tort, i.e., breach of the duty imposed by the oil and gas conservation laws of Oklahoma, as implemented through the OCC field rules
 
 
 [3]
 Samson Resources v. Corporation Commission and TXO Production Corp., 742 P.2d 1114, 1116 (Okla.1987)
 
 
 [3]
 During oral argument counsel for appellants stated that the Davis # 1-7 well was ordered shut in but that appellees refused to do so. Counsel also stated that Commission relief was not available to appellants because "this is a depletion reservoir. The reservoir was depleted to the point where when we found out, there was no effective relief at the Commission we could seek." Counsel later stated that his statement that the well had been shut in was incorrect
 Counsel for appellees denied that the well had been shut in and that the field had been depleted. Nothing in the record indicates that the well was ordered shut in or that the field was depleted.