**Larry P. ZELLEN et al.**

v.

**SECOND NEW HAVEN BANK.**

**Civ. No. N–78–107.**

United States District Court,
D. Connecticut.

Aug. 7, 1978.

 

John B. Nolan, Day, Berry & Howard, Dean M. Cordiano, Hartford, Conn., for plaintiffs.

Robert P. Burns, Marcus & Burns, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION

BURNS, District Judge.

This case stems from the default of a $900,000 promissory note. The note was executed on October 19, 1977, by the Sawmill Brook Racing Association, Inc., Ronald Mooney, and Everett B. Zellen, and was made payable to the defendant Second New Haven Bank. As collateral security for the repayment of the debt, Zellen delivered to the Bank 26,250 shares of preferred stock in Monogram Industries, Inc., and Sawmill Brook delivered to the Bank a mortgage deed to certain real property in Middletown, Connecticut. The note became due and payable on December 28, 1977, and was not paid. An extension of time for payment was granted until January 5, 1978, and again the note was not paid. On January 24, 1978, the Bank sold sufficient shares of Zellen's Monogram stock to satisfy its debt of $940,500 (consisting of principal, interest, late charges, expenses, and attorney's fees).

Everett B. Zellen died after the execution of the note, and the plaintiffs were appointed administrators c.t.a. of his estate on January 18, 1978. Claiming a common law right of subrogation, the plaintiffs requested the Bank to return the 1,655 remaining shares of Monogram stock, assign the mortgage over to them, and endorse the note. However, in November, 1977, a group of four parties had notified the Bank that, in the event of default, they laid claim to whatever shares of the Monogram stock remained after the Bank had satisfied its debt. These parties had granted the Bank approval to sell the stock in January, 1978, only upon the condition that the Bank release the mortgage on the Middletown property. Faced with conflicting claims to the stock, mortgage, and note in its hands,

the Bank, on March 8, 1978, filed an interpleader action in the Connecticut Superior Court seeking a full disposition of the disputed property and discharge of its liability to all parties claiming rights thereto.

On April 6, 1978, the Connecticut Superior Court, Grillo, J., issued a temporary injunction restraining Sawmill Brook, Ronald H. Mooney, and the other parties referred to above from taking any proceedings against the Bank in relation to the disputed property. Sylvia B. Zellen was not a party to the interpleader action at that time, but she has since been joined as a party. Such injunction did not apply to Larry P. Zellen because he had filed a Motion to Erase in the Superior Court on March 31, 1978; however, that Motion was denied by the Superior Court, Aspell, J. on April 26, 1978. On May 1, 1978, Larry P. Zellen filed a Plea in Abatement in the interpleader action claiming the Superior Court lacked jurisdiction over him. The Bank responded on May 16, 1978, by filing a Motion to Expunge the Plea in Abatement. Argument and decision on those motions are still pending in the Superior Court.

On May 1, 1978, the plaintiffs filed the present case in this District Court seeking one million dollars in damages for the Bank's allegedly wilful refusal to honor their common law rights of subrogation. The plaintiffs also allege the Bank collected $10,000 in excessive attorney's fees, and thus request $1,010,000 in damages, plus the return of the remaining Monogram stock, an assignment of the mortgage, an endorsement of the note without recourse, and an accounting of the collateral held by the Bank. On May 22, 1978, the Bank filed the instant Motion to Dismiss, arguing that this Court must decline jurisdiction in light of the interpleader suit pending in the Superior Court, and on June 2, 1978, the Bank filed the instant Motion for Stay of Proceedings, asking this Court to refrain from any further proceedings pending the outcome of the interpleader action currently before the Superior Court.

The Bank's argument in support of these motions is founded on the general rule of necessity that, when a state court acquires jurisdiction of the res in an action in rem or quasi-in-rem, a federal court is thereafter precluded from exercising jurisdiction over the same res so as to defeat or impair the state court's jurisdiction. This is especially true, the Bank maintains, when the state court suit is an interpleader action designed to determine every right, title, or interest to the disputed res. The plaintiffs argue that their federal suit should not be dismissed because its cause of action and issues are different from the state interpleader action. The plaintiffs claim that the gravamen of their complaint is the Bank's breach of duty to them, and thus any ruling in the federal suit would not interfere with the state court's control over the res.

The circumstances of this case have progressed to the point where this federal court and the state court are now poised in a position of jurisdictional competition. When such unwanted conflicts arise, the rule is that they "must be resolved according to the applicable statutes, if any, the rules developed by the courts themselves and the general principles of comity, in order that a harmonious relationship may be maintained." 1A J. Moore, *Federal Practice* ¶ 0.201 at 2024 (1977). Since there are no statutes applicable here, this conflict must be resolved by reference to extant court rulings and the general principles of comity. In the light of these criteria, and keeping in mind the maintenance of a harmonious relationship between federal and state courts as the overriding consideration, the Bank's Motion to Dismiss must be denied and its Motion for Stay of Further Proceedings granted.

Initially, it is necessary to resolve the threshold question of whether the state interpleader action is a proceeding in rem, quasi-in-rem, or in personam. No Connecticut court has expressly ruled on this question. The general rule is that "[w]hether a proceeding is in rem or in personam is determined by its nature and purpose, and by these only." 1 Am.Jur.2d, *Actions* § 39 at 573 (Rev. to 1977). The Connecticut Su-

preme Court specifically construed the purpose of the Connecticut Interpleader Statute, now C.G.S. § 52–484, in *Union Trust Co. v. Stamford Trust Co., et al.,* 72 Conn. 86, 43 A. 555 (1899) as follows:

It requires the court to which any complaint founded upon it may be brought to "hear and dispose of all questions which may arise in such case," and by the provision for making not only all who claim to be "entitled to," but all who claim to be "interested in," the property in question, parties defendant, shows that *its purpose is to secure a determination of every right, title, or interest that can by possibility be set up.*

*Union Trust* at 93, 43 A. at 558 [emphasis added]. Since the generally accepted definition of a proceeding in rem is "a proceeding to determine the right in specific property, against all the world, equally binding on everyone," 1 Am.Jur.2d, *Actions* § 40, it follows that an interpleader suit in a Connecticut state court may be reasonably construed to be a proceeding in rem.

■ This conclusion is strengthened by a comparison of the purpose of an in personam action with the purpose of an interpleader action. The object of an in personam action is to obtain a judgment against a person rather than to obtain a judgment determining the status and disposition of property. 1 Am.Jur.2d, *Actions* § 39 (Rev. to 1977). Here, the Bank has instituted the interpleader action for the express purpose of avoiding a judgment against its corporate person and to insure that any right, title, or interest concerning the disputed property will be finally adjudicated. The effect of the state court interpleader action, then, will not be to render a judgment against the Bank but to render a judgment disposing of all questions concerning the rights of the various parties to the disputed property. As such, the interpleader action cannot be construed to be in personam.

■ There are four recognized instances when a federal court may stay or dismiss a federal action pending the determination of a state court proceeding: in order to avoid an unnecessary determination of a federal constitutional question, *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and 1A J. Moore, *Federal Practice* ¶ 0.203[1] (1977); in order to avoid interference with a state criminal prosecution, *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); in cases where there is a predominant state interest, *Louisiana Power & Light v. Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and 1A J. Moore, *Federal Practice* ¶ 0.203[2] (1977); and in order to foster the interests of sound judicial administration, 1A J. Moore, *Federal Practice* ¶ 0.203[4] (1977).

■ It is the latter instance that is relevant here. In the words of Prof. Moore, "In a number of tightly drawn situations, federal courts may stay or dismiss federal actions in order to foster the interests of judicial administration: comprehensive disposition of litigation; conservation of judicial resources; and fairness to the parties." 1A J. Moore, *Federal Practice* ¶ 0.203[4] at 2135 (1977). The influence of this strong policy in favor of efficient judicial administration is reflected in the well-established rule that when a federal and a state court have actions whose subject is the same res which each court must control and dispose of in order to make its relief effective, "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Penn. General Casualty Co. v. Pennsylvania,* 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935). Furthermore, the effect of this policy is apparent in the general rule that a federal suit filed after a state court action should be dismissed when the federal and state proceedings involve identical issues and causes of action. 1A J. Moore, *Federal Practice* ¶ 0.203[4] at 2136 (1977). The Second Circuit has specifically held that district courts have the inherent power to stay federal actions when a similar action is pending in a state court. *Mottolese v. Kaufman,* 176 F.2d 301 (2nd Cir. 1949). And see *Will v. Calvert Fire Insurance Co. et al.,* —— U.S. ——, ——, 98 S.Ct. 2552,

57 L.Ed.2d 504 (1978), where the Supreme Court recently reaffirmed the holding of *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), that the decision whether to defer to the concurrent jurisdiction of a state court is committed entirely to the District Court's discretion.

Although the policy in favor of furthering efficient judicial administration has made its mark in a number of cases, the case law concerning the question of when a federal court can properly invoke the policy to dismiss a case is still uncertain and unformed. In *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court held that the district courts do have the authority to stay or dismiss a federal action because of the pendency of a state court proceeding. However, in the course of its opinion the Court stated that:

> Given this obligation [to exercise jurisdiction], and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist.

*Colorado River* at 818, 96 S.Ct. at 1246. The Court went on to discuss several circumstances permitting the dismissal of a federal suit due to a pending state court proceeding: whether the state court first assumed jurisdiction over the property; the inconvenience of the federal forum; and the desirability of avoiding piecemeal litigation. The Court concluded with the observation that, "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River* at 818–19, 96 S.Ct. at 1247. And in *Will, supra,* —— U.S. at ——, 98 S.Ct. at 2558, the

Court specifically stated that *Colorado River* "in no way undermines the conclusion of *Brillhart* that the decision whether to defer to the concurrent jurisdiction of a state court is, in the last analysis, a matter committed to the District Court's discretion." It is apparent that the Court intended the language in *Colorado River* to lay down a broad standard which the lower courts could wield at their discretion. After *Colorado River,* for instance, it would seem clear that it would not be proper for a federal district court to deprive a party of a federal forum merely because another litigant reached the state court house first. On the other hand, it would seem to be just as clear that, when a federal plaintiff is also a defendant in a pending state case, the federal action can properly be dismissed as long as the federal plaintiff's interests will be adequately protected in the state proceedings. 1A J. Moore, *Federal Practice* ¶ 0.203[4] at 2142 (1977). And where the court must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought, the jurisdiction of the second court must yield to that of the other which first assumed jurisdiction. *Princess Lida v. Thompson,* 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939). This principle applies not only to cases where property has actually been seized under judicial process before the second action is brought but applies as well to actions where, to give effect to its jurisdiction, the court must control the property, e. g., actions to marshall assets, administer trusts, liquidate estates. *Id.*

However the plaintiffs claim that the cause of action and issues of the instant case are different than those of the state action in that here they are asking this Court to adjudicate an alleged breach of duty by the Bank rather than to actually exert control over the res (i. e., the stock, mortgage, and note) and that this question will not be resolved in the state court.

They lean heavily on *Wood v. Citronelle-Mobile Gathering System Co.,* 362 F.2d 354 (5th Cir. 1966), to support their proposition that a federal suit based on a pending state

court interpleader action should not be dismissed where the federal suit involves different issues and causes of action. When the facts of *Wood* are distinguished from those of the instant case, however, it is evident that the precedential value of *Wood* is minimal. *Wood* involved the attempt of the plaintiff to recover the value of oil taken from his land and sold by the defendant. Before the filing of the federal suit or the state interpleader action, the plaintiff successfully sued the defendant for conversion and recovered a payment on that judgment. But instead of paying similar sums to the plaintiff which routinely accrued over time, the defendant chose to pay a lump sum amount into the state court with a prayer that it be disposed of through an interpleader action. The plaintiff thereupon filed the federal suit, claiming conversion and the malicious refusal of the defendant to pay the sums flowing from the earlier judgment. So in *Wood*, the plaintiff's right to the res had already been adjudicated by the time the federal suit was filed, and the primary issue became whether the defendant had maliciously withheld the payments due to the plaintiff. The Circuit Court found that that issue could not be adjudicated in the state interpleader action, and thus held the district court erred in dismissing the federal action.

In the present case, by contrast, there has been no previous adjudication of the plaintiffs' right to the res. In fact, that is precisely what the state interpleader action is seeking to do. The dismissal in *Wood* was overruled because there was a substantive issue before the federal court that would not be resolved by the state court proceedings. But here the so-called different issue of the Bank's allegedly wilful breach of duty by failure to recognize the plaintiffs' claimed right of subrogation can only be resolved after a determination of whether the plaintiff was indeed entitled to the res, and that is the fundamental issue— who is entitled to what parts of the res— that will be settled by the state court interpleader action. Since all of the plaintiffs' rights to the res stem from a determination of whether Everett B. Zellen was an accommodation party to the note and since that question will be adjudicated in state court, the grant of a Stay here will not extinguish the plaintiffs' federal action nor will it prejudice his interests currently hanging in the state court's balance. Furthermore, the plaintiffs' complaint itself belies their argument that they seek merely to adjudicate an alleged breach of duty by the bank since it demands, in addition to dollar damages, return of the remaining stock, assignment of the mortgage, and endorsement of the note. For this Court to grant such relief would overturn the state court's control over the res and vitiate the purpose of the interpleader action currently pending there. There is sufficient identity of the subject matter of these two actions since the real thrust of the federal action appears to be to gain control of the property at issue.

 Given the essential congruence of the issues and causes of action in the state and federal cases, and given the fact that the plaintiffs' interests in the res will be adequately protected in the state proceedings, an application of the criteria of the "wise judicial administration" rationale to the circumstances of the instant case reveals that a Stay of the plaintiffs' federal action is the only proper course for this Court to take. All the factors of comprehensive disposition of litigation, conservation of judicial resources, and fairness to the parties are satisfied by such a Stay. It is the express purpose of interpleader actions to avoid duplicative litigation by resolving all possible questions of liability between all possible parties in one proceeding. As such, interpleader actions are especially designed to advance the interests of wise judicial administration and should be furthered whenever possible. The state court interpleader currently pending is in a position to comprehensively dispose of all the potential litigation radiating from the default of the $900,000 note while facilitating the most efficient allocation of judicial resources and relieving the Bank of the unfairness of litigating the same action in two different courts (an abuse of the judicial system interpleader suits are intended to

forestall). It is not in the best interests of wise judicial administration for this Court at this late date to now step in and interfere with the state court's control over the res and the parties.

Similarly, the factors cited by the Supreme Court in *Colorado River*—whether the state court first assumed jurisdiction over the res, the inconvenience of the federal forum, and the desirability of avoiding piecemeal litigation—all point to the granting of a Stay. Here, there is no doubt the state court assumed jurisdiction over the res first. The inconvenience for the Bank of having to simultaneously litigate a state suit and a federal suit stemming from the same transaction and involving essentially identical issues and causes of action is obvious. In general, it is highly desirable to avoid piecemeal and duplicative litigation, and it is that much more desirable when an interpleader action designed and capable of avoiding just such litigation is pending in another court.

It is the conclusion of this Court that the combined weight of all these factors, when balanced against the obligation to exercise jurisdiction (which is itself weighty), tips in favor of a stay rather than a dismissal or an open arm acceptance of jurisdiction. "Where one of the courts has secured possession or dominion of specific property by proper process, the suit in the co-ordinate jurisdiction to affect the same property . . . should be stayed until the proceedings in the court which first obtained jurisdiction of the property are concluded, or ample time for their termination has elapsed." *Barber Asphalt Paving Co. v. Morris*, 132 F. 945 (8th Cir. 1904). It must be emphasized that such a stay does not extinguish the plaintiffs' federal action, but merely places it to one side pending the outcome of the state court interpleader action. Should the plaintiffs feel their rights have still not been fully adjudicated after the conclusion of the state court interpleader proceeding, they are free to return to this Court and seek to revive this action for the determination of any questions which may remain as to breach of duty or proprie-

ty of attorneys' fees. However, at the present time it is the conclusion of this Court that it is in the best interests of wise judicial administration and the maintenance of harmonious comity between the federal and state court systems to stay this federal action in favor of the state court interpleader proceedings. It is, therefore, ordered that the defendant's Motion to Dismiss be denied and its Motion for Stay of Further Proceedings pending final judgment by the Connecticut Superior Court on the action of interpleader be granted. It is so ordered.