**GHK EXPLORATION COMPANY, an Oklahoma partnership, Plaintiff–Appellee,**

v.

**TENNECO OIL COMPANY, a Delaware corporation, Defendant–Appellant.**

No. 86–1521.

United States Court of Appeals, Tenth Circuit.

May 26, 1988.

H.B. Watson, Jr., Lee K. Simpson, and Sharon Taylor Thomas of Watson & McKenzie, Oklahoma City, Okl., for defendant-appellant.

Robert G. Gum and Warren D. Majors of Spradling, Alpern, Friot & Gum, Oklahoma City, Okl., for plaintiff-appellee.

Before McKAY, SEYMOUR, and BALDOCK, Circuit Judges.

McKAY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument.

The determinative issue presented in this appeal is whether the Oklahoma Corporation Commission (Commission) or the district court has subject-matter jurisdiction to resolve whether certain correspondence between parties to a forced-pooling order constitutes a valid election to participate under the order.

The underlying facts, as revealed by the record, indicate that by 1981 Tenneco Oil Company (Tenneco) was the record owner of a one-half working interest in the minerals underlying Section 6, Township 5 North, Range 10 West, Caddo County, Oklahoma. On September 3, 1981, Tenneco entered into a letter agreement whereby Tenneco "farmed out" one-half of its interest in Section 6 to PCX Corporation (PCX) in exchange for an obligation of PCX to drill a well for Tenneco on another property. On October 20, 1981, Tenneco similarly "farmed out" its remaining one-half interest in Section 6 to Sexton Oil Properties (Sexton) in exchange for an obligation of Sexton to drill a well on the Section 6 property.[1]

On October 29, 1981, the mineral interest owned by Tenneco, but "farmed out" to PCX and Sexton, was forced-pooled by the Commission's Order No. 201498 (Order). Kirby Exploration Company (Kirby), who initiated the forced-pooling, owned the other one-half interest in Section 6 and was named the operator of the proposed well.

Pursuant to the Order, the mineral owners, *inter alia*, Tenneco, were given an option to elect whether to participate in the well. The Order states that if an owner desires to participate, it must evidence its election to Kirby in writing within sixty days of the Order. Record, vol. 2, exh. 5. Moreover, should an owner elect to participate, it is also required to prepay or provide satisfactory security for its portion of the estimated costs of the well within sixty-seven days of the Order. *Id.*[2]

Tenneco responded twice to the Order. Tenneco first sent a mailgram to Kirby on November 4, 1981, which stated:

> Tenneco Oil Company and their successors and assignees hereby elect under Oklahoma Corporation Commission Order # 201498, paragraph 5, subparagraph A, to participate for its full working interest in the proposed test.

*Id.* at exh. 10. Tenneco also sent a follow-up letter on November 4, 1981, which stated:

> Pursuant to the captioned Oklahoma Corporation Commission Order No. 210498 dated October 29, 1981, Tenneco Oil Company has assigned out one-half (½) of our interest in the captioned unit to PCX Corporation; 1000 W. Wilshire, Suite 430, Oklahoma City, Oklahoma, 73316, and one-half (½) to Sexton Oil Properties

---

1. Certain problems arose in the performance of both agreements. Neither PCX nor Sexton ever received formal assignments from Tenneco, and Tenneco remains the record owner of the Section 6 mineral interest.

2. The Order also states that if the owner fails to give notice within 60 days or fails to satisfy the prepayment or security requirement within 67 days, the owner shall be deemed to have elected not to participate. Record, vol. 2, exh. 5.

Inc., 5100 N. Brookline, Suite 1030, Oklahoma City, Oklahoma 73112.

Tenneco Oil Company and their successors and assignees hereby elect under Oklahoma Corporation Commission Order No. 201498, paragraph 5, subparagraph A, to participate for its full working interest in the proposed test.

*Id.* at exh. 11. These two items of correspondence are the only communications made by Tenneco, PCX, or Sexton to Kirby during the sixty-seven day period. Kirby did not make any request for prepayment or security from Tenneco, PCX, or Sexton.

In early 1982, GHK Exploration Company (GHK) obtained Kirby's operating interest in Section 6 pursuant to a "farm out" agreement and began drilling on Section 6. By October 1982, GHK had completed the well; however, the well was a marginal producer and was not expected to generate enough capital to pay back the capital costs of drilling. GHK sought to collect PCX's and Sexton's portions of the drilling costs but was unable to do so. When GHK subsequently demanded payment from Tenneco for Tenneco's share of the drilling costs, Tenneco refused, claiming it had not elected to participate under the Order but had merely elected for its assignees, PCX and Sexton.

GHK brought an action in the United States District Court for the Western District of Oklahoma to compel Tenneco to pay its portion of the drilling costs. Tenneco claimed that the district court lacked subject-matter jurisdiction to determine whether Tenneco had elected to participate under the Order. The district court rejected this argument, ruling that Tenneco's correspondence was so clearly an election that the court did not have to interpret the Order (which is within the Commission's exclusive jurisdiction) but merely had to determine the legal significance of the responses. The district court subsequently ordered Tenneco to pay its portion of the drilling costs, and Tenneco appealed to this court. Tenneco also filed an application with the Commission to determine whether Tenneco had elected to participate in the Section 6 well. This application was dismissed on GHK's motion, and Tenneco appealed the dismissal to the Oklahoma Supreme Court.

Appeal of the Commission's dismissal is pending before that court. Subsequent to its appeal to the Oklahoma Supreme Court, Tenneco moved this court to certify the jurisdictional issue to the Oklahoma Supreme Court or, in the alternative, to stay this appeal pending the outcome of its state court action.

■ The Oklahoma Supreme Court has frequently been asked to delineate the jurisdictional boundary between the Commission and the courts when dealing with forced-pooling orders. *See Samson Resources Co. v. Oklahoma Corp. Comm'n*, 742 P.2d 1114 (Okla.1987); *Nilsen v. Ports of Call Oil Co.*, 711 P.2d 98 (Okla.1985); *MM Resources, Inc. v. Huston*, 710 P.2d 763 (Okla.1985); *Drake v. Southwest Davis Unit*, 698 P.2d 15 (Okla.1985); *Tenneco Oil Co. v. El Paso Natural Gas Co.*, 687 P.2d 1049 (Okla.1984); *Amarex, Inc. v. Baker*, 655 P.2d 1040 (Okla.1982); *Woods Petroleum Corp. v. Sledge*, 632 P.2d 393 (Okla. 1981); *Crest Resources & Exploration Corp. v. Corporation Comm'n*, 617 P.2d 215 (Okla.1980); *Stipe v. Theus*, 603 P.2d 347 (Okla.1979); *Southern Union Prod. Co. v. Corporation Comm'n*, 465 P.2d 454 (Okla.1970). The general rule that has come from these cases is that the Commission has jurisdiction to interpret, clarify, amend and supplement its own orders and to resolve any challenges to "the public issue of conservation of oil and gas." *Tenneco*, 687 P.2d at 1054. The courts, on the other hand, have jurisdiction to enforce the Commission's orders and to resolve the "private rights" of the parties that are usually created by private operating agreements under a forced-pooling order. *See Tenneco*, 687 P.2d at 1053; *MM Resources*, 710 P.2d at 765; *see generally Samson Resources Co. v. Corporation Comm'n*, 702 P.2d 19 (Okla.1985) (courts have jurisdiction to resolve "private rights" in the context of voluntary-pooling orders).

Recently, the Oklahoma Supreme Court applied the general rule to determine whether the Commission has subject-matter jurisdiction to determine if a party's correspondence constitutes an election to participate under a forced-pooling order. *Samson Resources Co.*, 742 P.2d at 1114.

In *Samson* there were no private agreements between the parties, and Oklahoma Supreme Court ruled that determining whether the correspondence constituted an election would require a clarification of the order's election requirements and thus jurisdiction was with the Commission. *Id.* at 1116.

The present matter is not materially distinguishable from *Samson*. Although the district court concluded that Tenneco's communications in this case clearly constitute an election to participate under the Order, the Order does not make clear whether Tenneco's failure to prepay or provide security is something Kirby could waive; nor does the Order make clear whether Tenneco could elect for its assigns and avoid an election for itself. The determination of these election issues requires a clarification or interpretation of the Order and is thus reserved for the Commission.

We accordingly REVERSE and REMAND to the district court with directions to the district court to dismiss this action for lack of subject-matter jurisdiction. In light of our ruling, we do not address Tenneco's motion to certify the jurisdictional issue to the Oklahoma Supreme Court.