**Donald C. SLAWSON, Plaintiff–Appellant,**

v.

**MACK OIL COMPANY, Defendant–Appellee.**

**No. 84–2656.**

United States Court of Appeals, Tenth Circuit.

Dec. 31, 1992.

Gregory L. Mahaffey of Mahaffey & Gore, P.C., Oklahoma City, OK (J. Jayne Jarnigan of Mahaffey & Gore, P.C., with him on the brief), for plaintiff-appellant.

Henry C. Bonney of Garvin, Bonney, Weaver & Corley, Duncan, OK (Ronald E. Corley of Garvin, Bonney, Weaver & Corley, with him on the brief), for defendant-appellee.

Before ANDERSON and HOLLOWAY, Circuit Judges, and CHILSON,* District Judge.

HOLLOWAY, Circuit Judge.

In May 1984, Plaintiff–Appellant Donald C. Slawson filed this suit in the Western District of Oklahoma seeking to quiet title to his claimed interest in an oil and gas well and to obtain an accounting of the production from the well. The district judge dismissed Slawson's complaint for lack of subject matter jurisdiction, and this appeal followed. The panel abated Slawson's appeal because of ongoing state proceedings related to his claims. Before us is a pending motion that Slawson filed seeking to have the case remanded to the district court. We vacate our order of abatement, deny Slawson's motion to remand, reverse the district court's dismissal of the action, and remand for proceedings in accord with this opinion.

### I

In 1980 the Oklahoma Corporation Commission (the Commission or the OCC) issued Order No. 163830 (the Spacing Order)

---

* The Honorable Hatfield Chilson of the United States District Court for the District of Colorado, sitting by designation, heard argument of this appeal but passed away during its abatement and did not participate in this decision.

establishing, *inter alia,* a 640–acre drilling and spacing unit for the Deep Morrow and Deep Springer formations as well as other separate common sources of supply underlying Section 9, 3 North, 5 West, in Grady County, Oklahoma. Slawson owned mineral interests in Section 9 and on the basis of the Spacing Order, Slawson applied to the OCC in October 1982 for an order adjudicating the rights and equities and pooling the mineral interests in the 640–acre unit comprising Section 9.

In February 1983, while Slawson's application for a pooling order was pending, Bunker Exploration Co., not a party here, applied to the Commission to divide the 640–acre unit in Section 9 into four, 160–acre units. Before ruling on Bunker Exploration's despacing application, the Commission in June 1983 entered Order No. 240777 (the Pooling Order), pooling the interests of the oil and gas owners in the 640–acre unit and designating Mack Oil as the operator of the unit well. Slawson timely elected to participate in the proposed unit well, which was to be drilled in the center of the southwest quarter of the southwest quarter of Section 9. Mack Oil then began drilling the unit well, known as the Crabb No. 1–9, which when completed in June 1984 "proved to be a most prolific oil well." *Conoco, Inc. v. Corporation Commission,* No. 72,360, slip op. at 3 (Okla.Ct.App. Mar. 12, 1991). 

In January 1984 the Commission granted the Bunker Exploration application to despace the 640–acre unit in Section 9. By Order No. 251335 (the Despacing Order), the Commission created four, 160–acre units in Section 9, thus amending the earlier Spacing Order. Slawson appealed the Despacing Order to the Oklahoma Supreme Court. In August 1984, by Order No. 264533 (the Repooling Order), the Commission granted Mack Oil's application to repool the interests of the oil and gas owners in the southwest quarter of Section 9. Slawson also appealed this order.

The Oklahoma Court of Appeals eventually vacated both the Despacing and Repooling Orders in decisions that became final when the Oklahoma Supreme Court denied review. The Oklahoma Court of Appeals also vacated a subsequent despacing order by the Commission, Order No. 333152, that again established a 160–acre unit in Section 9; the Oklahoma Supreme Court again denied certiorari. Thus, following a series of agency proceedings and appeals to the courts, the Commission orders establishing a 640–acre unit in Section 9 and pooling the rights of the oil and gas owners in the 640–acre unit remain in effect.

## II

Slawson filed this diversity action in May 1984, shortly after the effective date of the Despacing Order that reduced the size of the unit to 160 acres. Slawson generally contends that his share of the production of the Crabb well should be based upon his interest in the larger 640–acre unit created by the Spacing and Pooling Orders, as opposed to his interest in the smaller 160–acre unit established by the subsequent Despacing and Repooling Orders. Slawson thus claims his share of the production from the Crabb well is 15.06184 percent, which was the percentage of his interest in the 640–acre unit. *See* I R. at 4–5 (complaint). Slawson notes that his interest in the southwest quarter of Section 9, in which the Despacing Order established the smaller 160–acre unit, is just 0.83190 percent. Opening Br. of Appellant at 3.

Slawson contends that Mack Oil has refused to recognize that he owns a 15.06184 percent working interest in the unit well, which constitutes a cloud on the title to his oil and gas leasehold interests in Section 9. I R. at 5. Accordingly, Slawson's federal suit seeks (1) to quiet title to his claimed interest of 15.06184 percent in the Crabb well and (2) to obtain an accounting for his claimed 15.06184 percent of the production from the well.

In June 1984, Mack Oil moved to dismiss this federal suit for lack of subject matter jurisdiction, or in the alternative to stay the litigation pending the outcome of related state proceedings. By an order filed on September 20, 1984, the district judge granted Mack Oil's motion to dismiss on

the ground that Slawson's claim was within the exclusive jurisdiction of the Commission. I R. at 99. The judge analyzed the case under *Tenneco Oil Co. v. El Paso Natural Gas Co.,* 687 P.2d 1049 (Okla.1984), which he read as indicating that whether courts or the Commission have jurisdiction over an issue "depends on whether private or public rights are at issue." I R. at 97. The judge reasoned that modification of a spacing order was within the Commission's "public function," and thus a dispute "which depends on whether modification of a spacing order was necessary or appropriate lies within the exclusive jurisdiction of the Commission." *Id.* at 99. Slawson's appeal followed.

### III

Before we reach the merits of Slawson's appeal, we address our order abating this appeal, which has been in effect since oral argument in June of 1986. We abated Slawson's appeal noting ongoing state proceedings involving the Repooling Order.[1] Slawson has pending before us a motion to remand the action to the district court, which would also suggest that we lift the abatement.

Slawson previously filed a motion to remand, which we denied in January 1989. At the time, the state proceedings for which we had initially abated the appeal

were complete[2] but further related state proceedings were ongoing involving the second despacing order. In addition, Mack Oil notified us that in May 1988 it had initiated a related interpleader action, *Mack Oil Co. v. Wisley*, No. C–88–211L (Dist. Ct. Stephens County, Okla. filed May 9, 1988), in the District Court of Stephens County, Oklahoma. Mack Oil pointed out that in the state action it had sought to interplead the proceeds representing production from the Crabb well from the date of the first production until November 7, 1985, which was the date the mandate issued following the opinion vacating the Despacing Order. Brief in Response to Appellant's Mot. to Remand at 3.[3] Mack Oil argued that Slawson had raised the same issues in the federal action as are presented in the state court suit in Stephens County, and that a remand would result in unnecessary litigation expenses. We ordered the parties to notify us of the status of (1) the state interpleader action in No. C–88–211L and (2) the litigation of Order No. 333152, which was the second despacing order.

On May 4, 1992, Slawson filed a second motion to remand, which is pending before us. In a status report accompanying the motion, Slawson noted that the litigation of Commission Order No. 333152, the second despacing order, had been concluded.[4] In

---

**1.** In the order of abatement we cited two ongoing state proceedings, Mack Oil's application to the Commission for repooling (No. CD–109928) and related appeals to the Oklahoma Supreme Court that were consolidated as No. 62,977.

Prior to oral argument the Oklahoma Court of Appeals had vacated the OCC's Despacing Order. *Conoco, Inc. v. Oklahoma Corporation Commission,* No. 61,720, slip op. at 9 (Okla.Ct.App. Feb. 12, 1985). The intermediate appellate court's decision became final when the Oklahoma Supreme Court denied certiorari and the mandate issued on November 7, 1985.

**2.** By a letter in November 1988 Slawson notified us of the status of the ongoing state proceedings and asked us to remand the case to the district court "for further proceedings on the merits." Slawson noted that the appeals of the Repooling Order, which we had cited in the order of abatement, had been completed. The Oklahoma Court of Appeals vacated the OCC's Repooling Order. *Conoco, Inc. v. Corporation Commission,* No. 62,977, slip op. at 4 (Okla.Ct.App. June 16,

1987). The Oklahoma Supreme Court denied certiorari.

**3.** In October 1991 the state district judge entered judgment in favor of Slawson and other mineral interest owners who sought title to the proceeds from the Crabb well on the basis of 640–acre spacing and pooling. *Mack Oil Co. v. Wisley,* No. C–88–211L (Dist.Ct. Stephens County, Okla. Oct. 1, 1991) (journal entry of judgment).

The state district judge ordered Mack Oil Co. "to account for and pay to [the mineral interest owners] all unpaid proceeds" from the Crabb well. Journal Entry of Judgment at 9. Subsequently Mack Oil filed an accounting with the state court. Slawson's Seventh Status Report at 2.

**4.** The Oklahoma Court of Appeals vacated Order No. 333152, the second despacing order. *Conoco, Inc. v. Corporation Commission,* No. 72,360, slip op. at 8 (Okla.Ct.App. Mar. 12, 1991). The Oklahoma Supreme Court denied certiorari, and the mandate issued in November 1991. Slaw-

response, Mack Oil requested that the abatement of this appeal continue until the accounting issues have been resolved by the interpleader suit in Stephens County.

■ After considering the progress of the related state litigation as reflected in Slawson's status reports and in Mack Oil's responses, we are persuaded that we should lift the abatement. The regulatory proceedings and related appeals to the Oklahoma Supreme Court that prompted our abatement of this appeal have been concluded. The parties' status reports indicate that the only state proceeding still underway that is related to this action is Mack Oil's interpleader suit in Stephens County. We see no justification for us to delay this appeal further. In deciding to lift the abatement we have considered that if there is federal subject matter jurisdiction over his action, Slawson is entitled to proceed with his case as a diversity matter. *See, e.g., New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 358, 109 S.Ct. 2506, 2512, 105 L.Ed.2d 298 (1989); *Meredith v. Winter Haven,* 320 U.S. 228, 234–35, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943); *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821).

Slawson's pending motion requests a remand to the district court and apparently he seeks to proceed there on the merits of his diversity claims. However, there is an outstanding order of the district court dismissing Slawson's action for lack of subject matter jurisdiction. We must, therefore, first decide the merits of that jurisdictional ruling. Accordingly, we vacate our order of abatement, deny Slawson's pending motion to remand, and address the merits of the jurisdictional ruling of the district court.

### IV

■ Our record and the Oklahoma court opinions reveal these salient undisputed facts. The OCC established a 640–acre drilling and spacing unit for the Deep Morrow and Deep Springer common sources of supply, *inter alia,* in 1980. Then while a

1982 application by Slawson for an OCC order pooling interests of owners of oil and gas rights underlying Section 9 was pending, Mack Oil and Bunker Exploration Co. sought to have the OCC despace the unit into 160–acre units.

However, in 1983 the Commission authorized the drilling of a single unit well for Section 9 and pooled the drilling rights of owners in the 640–acre unit for certain formations. Slawson and Conoco, not a party here, elected to participate and pay their proportionate share of the well costs and so informed Mack Oil. Mack Oil commenced drilling the Crabb No. 1–9 well and it was completed in June 1984, proving to be a prolific well.

In his 1984 complaint herein, Slawson alleged that Mack Oil refuses to recognize his claimed interest of some 15 percent in the well, which is based on his ownership of oil and gas rights in the entire 640–acre unit. Slawson requests that quiet title relief be granted as to his interest and that Mack Oil be required to account for the production from the well.

Mack Oil filed a motion to dismiss for lack of subject matter jurisdiction, or a stay of proceedings. The district judge granted the motion to dismiss, stating that resolution of a dispute "which depends on whether modification of a spacing order was necessary or appropriate lies within the exclusive jurisdiction of the Commission." I R. at 99. In so ruling, the court misjudged the nature of the case before it. Instead of challenging whether the spacing and pooling orders in effect were necessary or appropriate, Slawson has asserted that the legal effect of the orders and the undisputed facts is that he is entitled to a 15 percent interest in the Crabb No. 1–9 well. We must agree that the quiet title and accounting claims before the district judge were not matters for the Commission because of any necessity to interpret or clarify its orders. Instead, the case calls for a determination by the court of the legal effect of the Commission's orders, and then

son further noted that at Mack Oil's request the Commission on December 19, 1991, dismissed

Mack Oil's repooling application related to the second despacing order.

for quieting title and an accounting in accord with that determination.

We have reviewed the Oklahoma and federal decisions defining the jurisdiction of the courts vis-a-vis that of the Commission. In *Nilsen v. Ports of Call Oil Co.*, 711 P.2d 98, 101 (Okla.1985), the Oklahoma Supreme Court said that "[t]he district court clearly has jurisdiction to adjudicate the legal effect (as distinguished from the continuing effectiveness) of a Commission order or of an order of a court of competent jurisdiction upon title to land." [5]

And in a later case somewhat similar to the title dispute here, *Amoco Production Co. v. Corporation Commission*, 751 P.2d 203 (Okla.Ct.App.1986) (adopted by the Oklahoma Supreme Court, February 9, 1988), the court held that the Commission did not have "the authority to determine title in vested property interests." *Id.* at 208. The issue in *Amoco* was the effectiveness of an election to participate in a well authorized by a pooling order. Amoco had timely drilled and done all that was necessary to have its interest become vested in the formations pooled. The court held that the Commission's authority was only to authorize forced pooling of working interests on a unit-wide basis rather than on an individual well bore basis. Thus the

legal effect of the Commission's forced pooling order was for the courts to determine and the Commission's attempt to make that determination was reversed. *Accord Southern Union Production Co. v. Corporation Commission*, 465 P.2d 454 (Okla.1970) (Commission held without authority to determine the legal effect of its orders upon rights of parties).[6]

We have also noted *Eason Oil Co. v. Howard Engineering, Inc.*, 801 P.2d 710 (Okla.1990). Although the *Eason* court did not have before it a dispute as to the jurisdiction of the Commission as against that of the courts, this opinion of the Oklahoma Supreme Court illustrates a proper exercise of general jurisdiction by the courts in quiet title actions. The district court of Garfield County had confirmed the rights of both contractual and pooled participants in production from a well in a 640–acre spacing unit. The Commission later vacated its 640–acre spacing order and created 160–acre spacing. Litigation erupted concerning the quantum of interest to which the contractual participants were entitled. The trial court quieted title in the contractual owners based on the percentage of ownership established before despacing occurred. The pooled participants objected and appealed from that ruling.

5. The court held in *Nilsen* that the Commission had jurisdiction to determine whether there was a continuous drilling operation sufficient to constitute the timely commencement of a well. The operators, Ports of Call, had lost two holes by blowouts and had attempted to start a third well after expiration of the 180–day period specified in the pooling order. The Oklahoma Supreme Court said that the question of compliance with the pooling order required a construction of the order and that the parties were entitled to have the issue clarified by the Commission. *Id.* at 102–03. Thus the case involved not the legal effect of the order, but a determination whether the drilling operation complied with the requirements of the pooling order for the commencement of drilling of the unit well.

6. In *GHK Exploration Co. v. Tenneco Oil Co.*, 847 F.2d 650 (10th Cir.1988), we reversed a district court judgment ordering payment to Tenneco of the cost of participation in a well and holding that Tenneco had clearly elected to participate in its drilling. We held that the determination to be made was for the Commission and not for the district court. We noted the general rule from the Oklahoma cases that

"the Commission has jurisdiction to interpret, clarify, amend and supplement its orders and to resolve any challenges to 'the public issue of conservation of oil and gas.' ... The courts, on the other hand, have jurisdiction to enforce the Commission's orders and to resolve the 'private rights' of the parties that are usually created by private operating agreements under a forced pooling order." *Id.* at 652.

We are satisfied that the *GHK* case is distinguishable from the instant controversy. In *GHK*, it was necessary to determine whether a particular provision of the pooling order involved was complied with by the correspondence attempting to make an election. *Id.* at 653. Here there is no such dispute requiring an interpretation or clarification of the Commission's order. There is no dispute as to the actions that Slawson has taken in furnishing the irrevocable letter of credit and making payment on his share of the well costs. Instead only the legal effect of the despacing and repooling order, and the subsequent reinstatement of the 640–acre spacing and pooling are involved. The case thus falls squarely within the jurisdiction of the district court.

The Oklahoma Supreme Court defined the legal issue as "whether the Commission's despacing order may operate to distinguish rights previously acquired under a valid pooling order." *Id.* at 714. The court held that the pooling order was valid *ab initio* and created vested rights in the participants at that time. Accordingly the Supreme Court affirmed the district court's decree confirming the rights of the participants in the production from the well based on the initial spacing and pooling orders. The exercise of jurisdiction by the district court was not questioned by the Supreme Court.

This case, like *Eason* and *Amoco*, involves the determination of the legal effect of OCC spacing and pooling orders, not the interpretation or clarification of such orders. Hence the district court, not the OCC, has subject matter jurisdiction over this controversy. Accordingly, we REVERSE the judgment dismissing the action for lack of subject matter jurisdiction. The cause is REMANDED for further proceedings in accord with this opinion. We express no opinion as to the determination which the district court should make as to proceeding in light of the pending state court suit.[7]

---

**7.** The district judge will have discretion to make such a determination on how to proceed. "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....' *McClellan v. Carland* [217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910) ]." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *see also Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 16, 21–22, 103 S.Ct. 927, 937, 939–940, 74 L.Ed.2d 765 (1983). However, we are advised that the proceeding in the District

Court of Stephens County, Oklahoma, commenced in May 1988, is an interpleader action and Mack Oil asserts that the same issues involved here will be determined in that proceeding. In such circumstances we feel the district court has discretion to determine whether it should proceed before a state court determination. *Zellen v. Second New Haven Bank,* 454 F.Supp. 1359 (D.Conn.1978); *see Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 665–66, 98 S.Ct. 2552, 2558–59, 57 L.Ed.2d 504 (1978) (plurality opinion); *Brillhart v. Excess Insurance Co. of America,* 316 U.S. 491, 498, 62 S.Ct. 1173, 1177, 86 L.Ed. 1620 (1942).