**CENTURION OIL, INC., Appellant,**

v.

**STEPHENS PRODUCTION COMPANY and The Oklahoma Corporation Commission, Appellees.**

**No. 78599.**

Court of Appeals of Oklahoma, Division No. 3.

June 29, 1993.

Scott Borison, Oklahoma City, for appellant.

Gregory L. Mahaffey, Martha Martin, Oklahoma City, for appellees.

## OPINION

HANSEN, Chief Judge:

Appellant, Centurion Oil, Inc. (Centurion), seeks review of two orders of the Oklahoma Corporation Commission, (the Commission), wherein the Commission found Centurion in contempt and subsequently removed it as operator of a well located in Section 3, Township 18 North, Range 12 West, Blaine County, Oklahoma. Appellee, Stephens Production Company, (Stephens), is a working interest owner in the Section.

On July 28, 1988, upon the application of Centurion, the Commission issued a pooling order to pool the interests of the owners in Section 3 (Order No. 328652, Cause No. 144959). Stephens was named as a respondent. The pooling order required respondents to notify Centurion within 15 days, of their election to participate in the drilling of a well or to receive compensation in lieu of participation. There is no dispute between the parties that Stephens sent notification of its intent to participate within this period. The pooling order also required respondents who desired to participate in the drilling of the well to make such election by paying their proportionate part of the estimated completion costs or by securing or furnishing security for such payment satisfactory to the operator, Centurion, within 20 days from the date of the pooling order.

On August 8, 1988, Stephens elected to participate in the well and notified Centurion by certified letter. After this date, Stephens attempted to negotiate with Centurion whereby it might be relieved of the requirement in the pooling order that it secure costs up front. On August 17, 1988, Stephens received a letter from Centurion requiring it to pay completion costs up front. On August 18, 1988, one day after the 20–day period had expired, Stephens sent its costs to Centurion, who cashed the check. Centurion never mailed any payments in lieu of participation to Stephens as it had to the other non-participating owners. After the well was drilled and after Centurion had repeatedly requested and been denied certain well records, Stephens filed, on or about July 28, 1989, its applications to redetermine well costs and to produce in Cause No. 144959, and for contempt in Cause No. 000697.

On Stephens' motion to produce, the Administrative Law Judge granted the motion with regard to all requested records except well logs. It was at this hearing that Centurion raised for the first time, its contention that Stephens was not a participant in the well. The ALJ ruled the issue of Stephens' election to participate was not properly before it on the motion to produce and denied access to the well logs as such were not germane to the issue of redetermining well costs. This order will be referred to as the "production order."

Three weeks after the hearing on the motion to produce, the Commission issued an order denying Centurion's motion to dismiss the contempt citation. In this order, (the "dismissal order"), the Commission found Stephens had "substantially complied" with the terms and intent of Pooling Order No. 328652 by paying its costs and by Centurion's acceptance of such costs and actions in treating Stephens as a participant for over a year. The Commission further found it was only after Stephens filed the contempt application did Centurion

for the first time, take the position that Stephens was not a participant in the well.

On May 15, 1990, the Commission issued Order No. 347173, which found Centurion in contempt of Pooling Order No. 328652 and ordered Centurion to instantly furnish to Stephens all well information, including all logs on the Peter G 1–23 well. After this order issued, Centurion still refused to furnish Stephens the information or to pay Stephens any well revenue. Upon Stephens' application, the Commission removed Centurion as operator under the pooling order and named Stephens as operator.

In its first proposition of error, Centurion contends the Commission lacked jurisdiction to render the dismissal order. Jurisdiction was lacking, it maintains, because the Commission looked at the parties' conduct after the election period had lapsed to determine if Stephens' election was proper, and because the dismissal order is a prohibited collateral attack on the Pooling Order.

▓ There is no doubt the Corporation Commission has exclusive jurisdiction to determine whether an owner has properly elected to participate under a Commission-issued forced pooling order. 52 O.S.1991, § 111 and 112; *Tenneco Oil Company v. Oklahoma Corporation Commission*, 775 P.2d 296 (Okl.1989); *Samson Resources Company v. Oklahoma Corporation Commission*, 742 P.2d 1114 (Okl.1987); *GHK Exploration Company v. Tenneco Oil Company*, 847 F.2d 650 (10th Cir.1988). The substance of this proposition of error is not really an attack on the Commission's jurisdiction, but is more an attack on the finding in the dismissal order that Stephens was a participant in the well.

▓ The Corporation Commission has jurisdiction to construe and clarify its previous orders to determine compliance with those orders under the authority of 52 O.S. 1991, § 112. *Tenneco*, at 298. In determining whether an owner has made a proper election to participate under a pooling order, the Commission may consider events and conduct of the parties that occur after the period for making the election has run.

*Samson, supra; Kaneb Production Company v. GHK Exploration Company*, 769 P.2d 1388, 1392 (Okl.1989).

▓ The question is whether the Commission's finding that Stephens had made a proper election under the Pooling Order is supported by the evidence. When reviewing the sufficiency of the evidence which supports the Commission's findings of fact, this Court's review is restricted to determining whether the findings and conclusions are sustained by the law and substantial evidence. *Samson*, 742 P.2d, at 1116; Okla. Const., Art. 9, Sec. 20. This review does not include weighing the evidence on appeal but only determining whether the supporting evidence possesses substance and relevance. *Id.*

▓ The Commission found Stephens had substantially complied with the terms and intent of Pooling Order No. 328652 by paying its proportionate costs to Centurion. It further found Centurion had accepted the costs, and confirmed Stephens' participation election by "treating Stephens as a participant in the well for over one year." The record contains evidence that Centurion deposited Stephens' check into a Centurion bank account, sent Stephens a partial set of drilling reports, offered to market Stephens' gas from the well, never mailed any bonus payments to Stephens as it had to other non-participants in the well, and never told Stephens or Stephens' attorneys that Centurion did not consider Stephens a participant in the well. The Corporation Commission has jurisdiction to determine whether the correspondence between Centurion and Stephens constituted a proper election under the forced pooling order and whether Stephens' failure to prepay costs or provide security within 20 days is something Centurion could and did waive. *GHK Exploration Company*, 847 F.2d, at 653. Our review indicates the Commission's finding that Stephens is a participant, is supported by substantial evidence and is sustained by the law.

▓ With regard to Centurion's contention the Commission's finding of participation in the dismissal order is a prohibited

collateral attack on the pooling order, we can find nothing in the record to indicate this issue was ever raised in any of the proceedings below. Parties will not be permitted to raise issues before this court which were not raised below. *Bane v. Anderson, Bryant & Co.*, 786 P.2d 1230 (Okl.1989). Even if properly preserved for review, it is clear the Corporation Commission has jurisdiction to clarify a prior order and determine whether a party has satisfied a provision thereof. The Commission, however, may not collaterally attack a prior Commission order. *Kaneb Production Co. v. GHK Exploration Co.*, 769 P.2d 1388 (Okl.1989). The *clarification* of an order does not effect a change in a prior order or in the rights which accrued under the order. *Kaneb*, at 1391. The power to effect a change in a previous order requires a showing before the Commission of a change in conditions or knowledge of conditions necessitating the repeal, amendment or modification. *Kaneb*, at 1391. The dismissal order simply contained a finding that Stephens had made a proper election under the pooling order. The dismissal order does not change the pooling order or change any rights which had vested under the order.[1]

■ Next, Centurion maintains it was denied due process of law because it was found in contempt of an order which was not specific and definite and which did not specifically require it to provide well logs to Stephens. Centurion contends the pooling order does not specifically require it to furnish copies of well logs to participants. Centurion also argues the contempt order is a prohibited collateral attack on the earlier production order.

In the contempt order, (Order No. 347173), the Commission found dual induction logs, compensated density logs and cement bond logs were run on the Peter G 1–23 well and that according to the testimony of a Centurion officer, Stephens' participation costs covered part of the cost of the logs. The order further provided Centurion had not properly allowed Stephens to participate in the development of the unit as required by the pooling order due to Centurion's refusal to provide the well information paid for by Stephens.

■ The Corporation Commission has the power to punish for contempt, any person who fails to comply with an order or rule of the Commission. Art. 9, Sec. 19, Oklahoma Constitution; 52 O.S.1991, § 102; *Stamford Energy Corporation, Inc. v. Corporation Commission of State of Oklahoma*, 764 P.2d 880 (Okl.1988).

Although there is no language in the pooling order which specifically requires the operator, Centurion, to supply well logs to other participants, the subsequent dismissal order specifically found Stephens had made a proper election to participate by paying its proportionate completed well costs. The pooling order does provide respondents who have elected to participate in the drilling of the well are entitled to participate in the development of the unit upon payment of their proportionate costs of the completed well. At the contempt hearing, an officer of Centurion testified a portion of Stephens' costs covered the costs

---

1. Centurion maintains the order did change vested rights in that because Centurion did not receive Stephens' payment within the 20 days, that it became vested with Stephens' exploratory rights in the Section. In support, they cite *Ranola Oil Company v. Corporation Commission of Oklahoma*, 752 P.2d 1116 (Okl.1988). In *Ranola*, an owner's acceptance of bonus money constituted an assignment of the bonus taker's exploratory rights to the operator. The rights vested in the operator when the bonus was *paid*. It is undisputed in this case that Centurion never sent and Stephens never accepted any bonus money in lieu of participation. In *Eason Oil Company v. Howard Engineering, Inc.*, 801 P.2d 710 (Okl.1990), the Supreme Court of Oklahoma stated the rule that property interests vest and are beyond the reach of the Corporation Commission's power to modify after the pooling order's election period has come to an end *and* interest owners have paid or furnished security for their proportionate share of the estimated costs. *Eason*, at 713. In the case before us, Stephens made its election and sent its payment of costs, although one day after the election period had expired. The authority cited cannot be construed so that an operator becomes vested with another owner's property interest without paying that owner any bonus money, especially after the operator has accepted and cashed the owner's check for participation costs.

of the logs. There was also testimony that Centurion offered not to charge Stephens for the logs if Stephens would agree not to ask for a copy of the logs. At the hearing on the motion to dismiss, evidence was presented that it is industry custom for an operator to supply well logs to other participants.[2]

The Corporation Commission found Stephens' "participation" in the development of the unit had been denied because such information had been withheld from it. The Commission noted the inequity in construing the pooling order so that only Centurion could benefit from the well logs and other well information which has been paid for in part by Stephens. The contempt order directed Centurion to immediately turn over the requested information, and the Commission retained jurisdiction to order further relief if Centurion refused. Centurion refused and was subsequently removed as operator. The pooling order, as clarified by the subsequent dismissal order and contempt order, clearly required Centurion to furnish Stephens the requested information. These orders, when construed together, sufficiently apprise Centurion of the actions which the Commission directed it to take. Our review of the evidence indicates the contempt and removal orders are sustained by the law and supported by substantial evidence.

 With regard to Centurion's contention the contempt and removal orders are prohibited collateral attacks on the production order, we note as earlier, this issue was never raised before the Corporation Commission and therefore is not properly before us on appeal. Furthermore, the hearing on the motion to produce was held before the hearing on the motion to dismiss. At the hearing on the motion to produce, Centurion raised for the first time, their argument that Stephens was not a participant. The ALJ granted the motion to produce with regard to all information

except the well logs, finding that the logs were not necessary for the redetermination of well costs. The ALJ specifically found the issue of Stephens' participation *was not before it* as it was raised in that hearing without notice to Stephens. Thus, at the time the production order issued, Stephens' participation had not been decided and that order cannot be said to have determined Stephens' entitlement to the logs as a participant. Because the production order did not determine Stephens' right to the well logs under the pooling order, the contempt and removal orders are not prohibited collateral attacks on the production order. This assignment is without merit.

Corporation Commission Order Nos. 361167 and 347173 are accordingly, AFFIRMED.

BAILEY, P.J., and HUNTER, J., concur.

---

**2.** Neither party has argued (and the record is silent) that Stephens' right to the well logs and other information is governed by any subsequently-executed operating agreement. Many operating agreements, including the Model Form Operating Agreement, A.A.P.L. Form 610 (1989), provide that non-operator participants are entitled to certain well information, including well logs.